LESTER H. KAHL, APPELLANT, V. TED FREDERICK, SR., APPELLEE.
397 N.W.2d 46

Filed December 5, 1986.   No. 86-333.

Thurman Gay of Strope, Gay & Krotter, for appellant.

Thomas M. Maher of Maher and Arendt, and Mark Kozisek of Palmer and Kozisek, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This case involves a controversy concerning a contract for the care and training of racehorses owned by the plaintiff, Lester H. Kahl, and placed in the care of the defendant, Ted Frederick, Sr.

In March 1984 the parties entered into a written contract which provided as follows:

Agreement between ted Frederick & Les Khal [sic] owener [sic] of T.B. Horses to be trained by "me" & Bob assitant [sic] trainer Hauling to Nebr. all·vet. Bills, shoeing

expenes [sic] on Hauling horses to race meets. Pro-rated Per Horse at 10 cents per mile. Fees are to be $10.00 Per Hd per day while at the ranch or $15.00 Per day at track Plus 10% of all Earnings. Stake race fees shall be Paid by Les. if "I" ted cripple more then [sic] three out of 15 head that are sound when brought to me we will not charge for those horses.

/s/OK L A Kahl                    /s/Ted Frederick
                                  /s/Robert Frederick

On April 4, 1984, 12 horses were delivered to Frederick in Nebraska. Thirteen others were delivered on May 15, 1984. Following a disagreement over Frederick's June and July billings, Kahl refused to pay for any of the horses' training or maintenance subsequent to July 31, 1984.

After Kahl paid the July billing, nine of the horses in Frederick's possession were sent to a stud farm in Minnesota, at Kahl's direction.

On November 9, 1984, Rocket Pacer, a horse then in Frederick's possession, was destroyed after being injured in a race at Lincoln, Nebraska. On December 28, 1984, Frederick sent Kahl a certified letter demanding payment of $19,329.02, or the horses in Frederick's possession would be sold at public auction on January 21, 1985, in Platte, South Dakota.

The plaintiff then commenced this action to recover possession of the horses and damages for breach of contract. The case was tried to the court on the third amended petition, filed January 8, 1986, and an answer and counterclaim that does not appear in the record. At the end of the plaintiff's evidence, the trial court sustained the defendant's motion for a directed verdict as to the cause of action for breach of contract. At the close of the defendant's evidence, the trial court sustained the plaintiff's motion for a directed verdict as to the second cause of action of the counterclaim.

The trial court found that the plaintiff was entitled to relief on his first cause of action and that the defendant was entitled to recover $18,331.50 from the plaintiff.

The plaintiff has appealed and contends the trial court erred

in sustaining the defendant's motion for a directed verdict as to plaintiff's second cause of action.

The plaintiff alleged that in addition to the terms set out in the written agreement, there were certain oral agreements which the defendant had breached. The plaintiff sought $1 million in special damages as compensation for the death of Rocket Pacer, the horse which was destroyed, and general damages for the decrease in value of his horses due to the defendant's alleged breach of the contract.

In sustaining the defendant's motion for a directed verdict as to the second cause of action, the trial court stated:

> Well, in my opinion the person who agisters a horse is not the insurer of the horse, that there must be — you might debate on the standard of care required, but I don't think that just having moved a horse to Lincoln and assuming that it is wrongful would be the justification would impose liability for the death of the horse. That there is no proof of negligence. There is no proof of any other theory of liability and therefore I sustain the motion and direct the verdict in favor of the defendant and against the plaintiff on the second cause of action.

At the time the plaintiff rested and the motion for a directed verdict was sustained, the evidence consisted only of testimony by the plaintiff. A part of the plaintiff's burden was to introduce sufficient proof of damages to permit a recovery. The plaintiff must present sufficient evidence to allow the trier of fact to estimate the actual damages with a reasonable degree of certainty and exactness. *Lis v. Moser Well Drilling & Serv.*, 221 Neb. 349, 377 N.W.2d 98 (1985).

The only evidence as to damages introduced by the plaintiff related to Rocket Pacer, the horse that was destroyed after being injured in a race at Lincoln, Nebraska.

Although the plaintiff alleged that Rocket Pacer had a true market value of $1 million, no satisfactory evidence was presented on this issue. The closest the plaintiff came to giving an opinion on the horse's value was on cross-examination:

> Q. All right. And this is a horse that in your claim that you — you claim a $1,000,000.00 for apparently in the Petition, anyway, but you wouldn't even take a telephone

call on this so-called million dollar horse?

A. That has nothing to do with the value of the horse.

Later, in testimony on cross-examination about the horse's breeding, the plaintiff testified as follows:

Q. Okay. So this horse that you are saying is the greatest horse in the world, the greatest miler, you paid $3,500.00 (sic) for?

A. Yes.

Q. And you bred it to a $2,000.00 mare?

A. Yes.

Q. And all of a sudden the offspring is a $1,000,000.00 horse?

A. Nothing unusual about that.

No other witness was called to express an opinion as to Rocket Pacer's value.

Apart from the testimony on cross-examination, the plaintiff testified that Rocket Pacer was sired by "the fastest miler that ever ran." Further cross-examination showed that the highest the plaintiff had ever paid for a horse was $6,500. He also testified that one way to determine a horse's value is track performance, although "many horses are sold for over a million dollars that never ran at all because they have a full sister or a full brother who was a great horse." The plaintiff then went on to testify that Rocket Pacer was a full sister to a horse that finished last after breaking down in its first race.

On redirect the plaintiff testified pedigree is as important as winnings and that many yearlings without race records are sold for over $10 million strictly on the basis of pedigree. However, there is no support for an inference that Rocket Pacer was such a horse.

From this evidence the value of the horse was uncertain at best. For this reason the court did not err in directing the verdict against the plaintiff, as reasonable minds could draw but one conclusion, i.e., the evidence failed to show with reasonable certainty the extent of the plaintiff's damage.

"Where the record adequately demonstrates that the decision of a trial court is correct, although such correctness is based on a ground or reason different from that assigned by the trial court, the Supreme Court will affirm." *Sommerfeld v.*

*City of Seward*, 221 Neb. 76, 80, 375 N.W.2d 129, 132 (1985).

From our review of the record we conclude that the trial court did not err in sustaining the defendant's motion for a directed verdict as to the second cause of action. The judgment is, therefore, affirmed.

AFFIRMED.