CHADD CHRISTOPHER CHIRNSIDE, A MINOR, BY AND THROUGH
ELAINE A. WAGGONER, HIS GUARDIAN AND CONSERVATOR,
APPELLANT, V. LINCOLN TELEPHONE & TELEGRAPH COMPANY, A
CORPORATION, APPELLEE.

401 N.W.2d 489

Filed February 27, 1987.    No. 85-342.

Warren C. Schrempp and Peter J. Hoagland of Schrempp, Hoagland, Gray & Gerdes, and Elaine A. Waggoner, for appellant.

William D. Sutter, Kile W. Johnson, and Robert W. Shively of Barlow, Johnson, DeMars & Flodman, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

WHITE, J.

This is an appeal from a judgment rendered by the district court on a jury verdict in favor of plaintiff-appellant in the amount of $175,000 for personal injuries suffered by appellant's ward in a pedestrian-motorist accident in Lincoln, Nebraska. Plaintiff appeals.

Several errors are assigned, and they may be stated in the

following general categories: (1) The verdict was inadequate; (2) The court failed to allow the jury to consider loss of earning capacity as an element of damages; (3) Certain evidence was erroneously admitted; (4) The court erred in failing to instruct the jury that defendant was negligent as a matter of law; and (5) The court erred in failing to give certain instructions requested by appellant and in giving certain other instructions relating to negligence and contributory negligence.

A detailed statement of the facts will be helpful in an understanding of the issues.

Appellant's ward, Chadd Christopher Chirnside, was 8 years of age on June 26, 1981, the date of the accident. Chadd was living with foster parents in Lincoln and attending summer school at Elliott School at 25th and N Streets in Lincoln. The foster parents' (Henry and Linda Rappl) residence is located at 2137 E Street. Chadd attended summer school during the morning hours to correct a perceived educational deficiency. At the time of the trial Chadd lived with his adoptive parents in Omaha.

To reach Elliott School from the Rappl residence it is necessary to cross Capitol Parkway, a divided arterial street. On the day of the accident the route taken included the intersection of Randolph Street near Lincoln High School. At the Randolph intersection the total distance from curb to curb of Capitol Parkway, including all passing and turning lanes and a median, is 85 feet. The time for crossing the intersection free of traffic on Capitol Parkway is 22 seconds. The average adult walks at a rate of 3 to 4 feet per second; thus, if an adult stepped off the curb exactly at the moment the walk sign for pedestrians crossing Capitol Parkway came on and traveled at 4 feet per second, he would have a safety margin of 3 feet and three-fourths of a second before motorists started crossing Randolph. The city of Lincoln is not a party to the action, and the safety of the intersection is not an issue.

Capitol Parkway runs in a generally southeast to northwest direction at Randolph Street. The defendant's driver and a passenger were returning from a duty assignment at approximately noon to the Lincoln Telephone & Telegraph Company building. The defendant's LT&T utility truck was

traveling in the extreme right-hand lane in a northwesterly direction, on a green light. As the truck proceeded through the intersection, the passenger, Wyman Dughman, informed the driver and his fellow LT&T employee, Gerald Harris, "There's a pedestrian in the crosswalk." Harris testified that he did not see Chadd before the accident, applied his brakes, and struck Chadd. Harris did not know the direction in which Chadd was traveling. Chadd was struck by the left front fender of the truck and was thrown and rolled a distance of 49 feet from the northernmost crosswalk stripe. Chadd has no recollection of the accident. Chadd was taken to Lincoln General Hospital; he was bleeding from his left ear, nose, and scalp. He remained in a coma or semicoma for 8 days. His left femur was fractured, and the fracture could not be reduced until 12 days after the accident. Testimony was presented to prove that as a result of the accident Chadd incurred brain damage, resulting in impaired cognitive and speaking abilities and coordination, loss of hearing on the left side, and facial sagging on the left side. The injuries manifested themselves in Chadd's garbled speech, inability to build things with boards, inability to remember his address and telephone number, twitching eyes, and lack of athletic coordination. Further surgery will be required to correct a limp caused by the necessary shortening of Chadd's left leg by three-fourths of an inch in the treatment of the fractured femur.

Extended testimony was received concerning Chadd's preaccident mental acuity and his postaccident defects in his abilities to read, spell, dress himself, communicate, and perform simple physical and recreational tasks.

The trial court submitted the allegations of negligence and contributory negligence to the jury. After the verdict, plaintiff brings this appeal.

With respect to the first assignment of error, that the verdict was inadequate, the jury found appellee negligent, and we affirm that finding. We are not convinced that the appellee was negligent as a matter of law, but in view of our decision to remand on the issue of damages no useful purpose can be had by an extended discussion of the first assignment.

We next consider whether the trial court erred in submitting

the alleged contributory negligence of Chadd, and the related question of whether the jury should have been directed on liability. In viewing the matter we are guided by the rule that where evidence is in conflict or reasonable minds may differ, it is normally within the province of the jury to decide issues of fact. *Koerner v. Perrella*, 213 Neb. 189, 328 N.W.2d 473 (1982); *Poppe v. Petersen*, 221 Neb. 877, 381 N.W.2d 534 (1986).

There is evidence from which a jury could conclude that Chadd was returning from Elliott School to the home of his foster parents (i.e., from the northeast to the southwest) and stepped into the first lane of northwestern-bound traffic of Capitol Parkway when a "Don't Walk" sign at Randolph prohibited such entry. There is further evidence that the LT&T truck entered and nearly crossed the intersection on a green light before observing Chadd. No complaint is made of instructions relating to the reduced duty of a child with respect to care for his own safety. It is sufficient to state that a jury issue was presented. The assignments are not meritorious.

We next consider the trial court's refusal to instruct the jury in assessing damages it could consider in Chadd's loss of capacity to earn in the future. At the instruction conference, the court stated:

> I'm not going to instruct on loss or impairment of future earning capacity. We have evidence from Dr. Wolcott that he would be hard pressed to get beyond high school. What that means, we don't know, in terms of dollars and cents. He'll, one would imagine, certainly, you know, have a permanent disability, and there was evidence of permanency. What that will translate into in terms of his earning capacity, I don't think there's enough evidence. Now, the evidence in that regard, I believe our Supreme Court is saying, can be rather minimal. And I've read Baylor v. Tyrrell.
>
> . . . .
>
> Now, we don't have to have evidence of any prior earnings or anything like that, but — it could be minimal, but it just seems to me that we have not reached the minimal threshold of impairment of earning capacity.

In *Baylor v. Tyrrell*, 177 Neb. 812, 822, 131 N.W.2d 393, 400

(1964), this court noted that in objecting to the instruction, appellant's counsel asserted that "no loss of past earnings was proved, and none was pleaded." We said, "On the other hand, impairment of earning capacity is an item of general damage and proof may be had under general allegations of injury and damage. [Citations omitted.] Proof of an actual loss of wages or earnings is not essential to a recovery for loss of earning capacity." *Id*. at 823, 131 N.W.2d at 400-01.

We quoted with approval language from a Minnesota case, *Wilson v. Sorge*, 256 Minn. 125, 132, 97 N.W.2d 477, 483 (1959), speaking of impairment of earning capacity as an item of general damage:

> It permits recovery for a loss or diminution of the power to earn in the future and is based upon such factors as the plaintiff's age, life expectancy, health, habits, occupation, talents, skill, experience, training, and industry. It is within the province of the jury to weigh all these elements and, guided by experience and common sense, to arrive at the proper monetary value of plaintiff's loss without recourse to his past earnings.

See, also, *Washington v. American Community Stores Corp.*, 196 Neb. 624, 244 N.W.2d 286 (1976).

Proof was introduced as to Chadd's age, life expectancy, health, habits, talents, skills, and permanency of certain injuries. As argued persuasively by appellant's counsel, Chadd, who had admittedly limited educational skills before the accident, cannot conceivably have been other than adversely affected by a brain injury and related memory, speech, and loss of hearing problems and, of course, a shortened leg resulting in a pronounced mobility problem. Appellee LT&T does not point out the "minimal threshold of impairment of earning capacity" that Chadd did not meet so as to entitle it to the instruction given. On the contrary, the proof was adequate and the failure to instruct on future earning capacity was error requiring a reversal for retrial on the issue of damages.

As this court cannot state whether the jury found that Chadd was not contributorily negligent or whether it found him to be contributorily negligent but to a degree less than slight when compared to the defendant's gross negligence, the issue of

contributory negligence will necessarily again be submitted to the jury in its determination of damages. The jury must, however, be informed that the negligence of Chadd, if any, is less than slight, and the jury must be instructed to return a money verdict for appellant.

The appellant assigns as error the admission into evidence of a statement of the LT&T driver, Harris, given to Officer Starr at the accident scene. On the plaintiff's case in chief the following questions were asked by counsel:

Q. Now, Officer, as I understand it, once again, you observed only one skid mark. Now, you had a conversation with the driver of the truck at the scene of the accident, is that correct?

A. Yes, I did.

Q. Now, did he make any observations to you at that time, Officer, about the way the truck handled when he attempted to bring it to a stop?

A. Yes, he did.

Q. And what did he say to you?

A. He felt that the brakes were not working properly.

The statement was admitted as an admission of a party pursuant to Neb. Rev. Stat. § 27-801(4)(b) (Reissue 1985).

Officer Starr was later recalled to the stand by the defendant, and defense counsel was allowed to inquire into the rest of the same conversation. His testimony with regard to the conversation included the following:

Q. . . . Officer Starr, you testified that you had a conversation with the driver of the pickup truck, Gerald Harris.

A. Yes.

Q. Was that a conversation about fifteen minutes after the accident occurred?

A. It would have been real close to that. I can't say exactly it was fifteen minutes.

Q. Did you have more than one conversation with Gerald Harris?

A. No.

Q. What did Mr. Harris say to you in that conversation?

. . . .

THE WITNESS: I had questioned Mr. Harris in regard to the accident. Essentially, Mr. Harris stated to me that he was northwestbound on Capitol Parkway in the curb lane, approximately 30 to 35 miles per hour. He stated that when he was four to five car lengths from the intersection of Randolph that he observed that he had a green light for northwestbound traffic. He stated that he continued into the intersection, at which time he heard the passenger in his vehicle yell something to the effect of look out, at which time he stated that directly in front of him he observed a juvenile and that the juvenile was running to the south. He states that he applied his brakes and then the collision occurred.

Appellant contends that Harris' statement about the boy's running to the south was inadmissible as substantive evidence because prior inconsistent statements were admissible only for purposes of impeachment. Appellee contends that the statement was admissible as substantive evidence. Neb. Rev. Stat. § 27-106(1) (Reissue 1985) states:

When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. When a letter is read, all other letters on the same subject between the same parties may be given. When a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence.

The driver, Harris, testified previously that he was driving through the intersection at 30 to 35 miles per hour and did not see Chadd until his attention was called to Chadd's presence by his passenger. We observe that had the statement been offered for impeachment purposes only it was clearly admissible; the requirement of previous examination of the declarant and declarant's denial no longer pertains in Nebraska law. See *State v. Johnson*, 220 Neb. 392, 370 N.W.2d 136 (1985).

In discussing the completeness doctrine in *State v. Manchester*, 213 Neb. 670, 679, 331 N.W.2d 776, 781 (1983), we stated:

The defendant's argument is based on the "rule of completeness," which states that an opponent may require one introducing part of a writing or statement to introduce any part which ought in fairness to be considered with the part introduced. See, Fed. R. Civ. P. 32(a)(4), which applies the rule to use of depositions; McCormick on Evidence § 56 (2d ed. 1972); Fed. R. Evid. 106, Notes of Advisory Committee.

Generally, the rule of completeness is concerned with the danger of admitting a statement out of context. McCormick on Evidence § 56 (E. Cleary 3d ed. 1984). When this danger is not present it is not an abuse of discretion to fail to require the production of the remainder or, if it cannot be produced, to fail to exclude all the evidence.

The rule was stated by the Minnesota Supreme Court, " 'When part of a conversation is brought out on cross-examination the remainder of the conversation may be brought out . . . if it tends to qualify or explain the part disclosed . . . ; *otherwise not.'* " *Jeddeloh v. Hockenhull*, 219 Minn. 541, 551, 18 N.W.2d 582, 588 (1945). The conversation introduced by plaintiff dealt only with whether the truck had faulty brakes. The proffered conversation did not qualify or explain the previous testimony. Whether Chadd was running or not running cannot conceivably be said to embrace the subject of faulty brakes. The admission of the testimony was error.

Since this case must be retried in part, we must comment on another evidentiary ruling. The trial court excluded the deposition evidence of the driver, Harris, on the ground that as a condition of the admission of that evidence the offering party must demonstrate the witness' unavailability. The deposition was clearly admissible under § 27-801(4)(b) as a statement offered against a party in either his individual or a representative capacity. Neb. Ct. R. of Disc. 32 (rev. 1986) refers to witness testimony and not to admissions of a party.

The remaining assignments of error relate to matters which will be unlikely to occur on retrial in view of our evidentiary rulings and do not need to be discussed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL ON
THE ISSUE OF DAMAGES.