SESOSTRIS TEMPLE GOLDEN DUNES, AN UNINCORPORATED ASSOCIATION, APPELLANT, V. JAMES SCHUMAN, DOING BUSINESS AS BLUE ENGINEERING, APPELLEE.

409 N.W.2d 298

Filed July 17, 1987.   No. 85-696.

T.J. Hallinan of Law Offices of Cobb & Hallinan, P.C., for appellant.

Hal W. Anderson of Berry, Anderson, Creager & Wittstruck, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Boslaugh, J.

This action arises out of a dispute concerning an oral agreement between the plaintiff, Sesostris Temple Golden Dunes, an unincorporated association, and the defendant, James Schuman, doing business as Blue Engineering, for the design and manufacture of certain parts for dune buggies.

The case was tried for 4 days on the plaintiff's third amended petition, the defendant's amended answer, and the plaintiff's reply.

The third amended petition alleged the defendant agreed to supply all material and manufacture the running gear for 10 dune buggies for $3,500. Since the dune buggies were to be used in parades and competitions, they were to be identical. Because the defendant failed to supply all materials as agreed, the plaintiff was required to supply parts costing $1,619.03. Because of poor workmanship the plaintiff was required to purchase additional parts costing $991.11. The plaintiff's damages amounted to $2,610.14.

A second cause of action alleged the defendant had overcharged the plaintiff $5,169.65.

The answer alleged the agreement was for the manufacture of a chassis with front hubs, steering gear, and gocart disk brakes; that the parts supplied were identical except that the use of black pipe as required by the plaintiff may have resulted in some deviation; that additional costs were incurred because of changes made by the plaintiff, which the defendant agreed to supply on the basis of cost plus labor; that some parts specified by the plaintiff were inferior in quality, resulting in additional costs; and that the plaintiff waived any claim for defects by accepting the product and not giving the defendant an opportunity to correct alleged defects.

A counterclaim alleged there was $1,680 due the defendant for extra time and labor as a result of modifications to the specifications and of discussions with the plaintiff concerning

changes and modifications to the specifications.

The reply amounted to a general denial of the allegations of the answer and counterclaim.

Before trial the plaintiff filed a motion in limine to exclude evidence of money received by its members from the sale of some of the dune buggies and to exclude the date the petition had been filed. Plaintiff's motion was sustained as to the sales, but not as to the date the petition was filed.

The jury found for the defendant on plaintiff's first cause of action, for the plaintiff on its second cause of action in the amount of $212.76, and for plaintiff on defendant's counterclaim. This appeal followed.

The plaintiff has assigned as error the trial court's denial of its motion in limine to exclude evidence as to the date the petition was filed; the trial court's failure to advise and consult with the attorneys concerning written questions from the jury; the trial court's failure to instruct the jury as to theories or issues supported by the evidence; the failure to submit special interrogatories or a special verdict form to the jury; the giving of certain instructions; and the prohibiting of argument that the frames were to be, but were not, identical.

The plaintiff did not brief the assignments of error concerning the motion in limine, the failure to instruct that there was a contract which did not require the defendant to supply parts, the failure to submit special interrogatories or a special verdict form, and the giving of instruction No. 13. Accordingly, those assignments of error will not be considered. Neb. Ct. R. of Prac. 9D(1)d (rev. 1986). See, also, *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987).

The testimony at trial was conflicting, and the facts concerning the terms of the oral agreement and alleged subsequent modifications are disputed. The evidence was sufficient to support the verdict. It is unnecessary to summarize the evidence in detail or to discuss the many conflicts in the testimony.

The plaintiff first argues that the trial court erred in failing to instruct the jury that the contract required the construction of identical vehicles. Plaintiff argues that theory was presented by the pleadings and supported by competent evidence, and its

omission was prejudicial error. The defendant responds the trial court properly omitted such an instruction because the plaintiff failed to allege any damages resulted from the defendant's alleged failure to construct identical buggies.

Instruction No. 2 did not set forth the plaintiff's allegation that the buggies were not identical, the allegation that the defendant had been made aware the buggies were to be identical, or that the defendant affirmatively alleged the buggies were in fact identical because the manufactured parts were built "on a jig," which ensured that all parts would be identical. The defendant had also alleged that any variations had been caused by the plaintiff. The president of the plaintiff, Harry Hartley, testified he informed the defendant, at their first meeting, that the buggies would be used in competition and had to be identical. On cross-examination, the defendant admitted that Hartley had so informed him. The trial court refused to give the requested instruction on the ground the issue was not relevant, because there was no evidence presented upon which the jury could base an award of monetary damages. Although there was evidence the defendant had been notified the buggies were not identical, there was no evidence of any damages suffered as a consequence.

The party seeking recovery has the burden of proving damages with as much certainty as the case permits. *Lis v. Moser Well Drilling & Serv.*, 221 Neb. 349, 377 N.W.2d 98 (1985). Such evidence must be sufficient to allow the trier of fact to estimate damages with a reasonable degree of certainty and exactness. *Kahl v. Frederick*, 224 Neb. 212, 397 N.W.2d 46 (1986). Since there was no evidence of any loss of value caused by the defendant's alleged failure to produce identical frames, there was no issue to be submitted to the jury.

The plaintiff next contends that instructions Nos. 2 and 14 were erroneous, because the Uniform Commercial Code was not applicable.

The defendant responds the court properly instructed the jury, because article 2 of the Uniform Commercial Code was applicable to the transaction, as the dune buggy frames were "goods" as defined by the code.

The record shows the parties tried the case on the theory that

article 2 of the Nebraska Uniform Commercial Code was applicable. The defendant's amended answer affirmatively alleged the plaintiff had failed to give reasonable and timely notice of the defects and time to correct the defects. The third amended petition alleged the plaintiff had given notice of the defects within a reasonable time but the defendant had failed to correct them. There was conflicting evidence concerning notice of the defects given by the plaintiff, and the defendant's attempts to correct them. Further, the plaintiff did not object to instruction No. 14, which was drawn from Neb. U.C.C. § 2-609 (Reissue 1980) and stated that a buyer must notify the seller of a breach within a reasonable time after its discovery, and the burden is on the buyer to establish such a breach. Plaintiff also failed to object to that portion of instruction No. 2 which stated the plaintiff had to prove that it had given reasonable notice to the defendant of the alleged breaches.

The transaction in question was a mixed one; a sale of goods as defined by Neb. U.C.C. § 2-105 (Reissue 1980), and a sale of services. However, it is clear the parties tried the case on the theory that article 2 of the U.C.C. applied. Accordingly, we make no independent analysis of the issue and assume, without deciding, that article 2 applies to the transaction. See, *Hammond v. Streeter,* 225 Neb. 491, 406 N.W.2d 633 (1987); *O'Keefe Elevator v. Second Ave. Properties,* 216 Neb. 170, 343 N.W.2d 54 (1984); *Kearney Clinic Bldg. Corp. v. Weaver,* 211 Neb. 499, 319 N.W.2d 95 (1982).

The plaintiff next argues that the trial court erred in failing to notify counsel of the questions submitted by the jury during deliberation, which resulted in prejudice to the plaintiff. The trial court responded to the jury's requests by stating, "Reread the instructions. The answers to your questions can be found there."

The plaintiff argues that the verdict clearly indicates prejudice resulted from the court's failure to inform counsel of the jury's questions. In particular, the plaintiff argues the $212.76 which the jury awarded as a refund of overcharges must have been obtained by adding together the amounts charged by the defendant to install motor braces, bearings, and throttle cable, incurred after delivery. Plaintiff argues these

charges should have been awarded under its first cause of action, which alleged a failure to perform in a workmanlike manner. The plaintiff argues that counsel should have been given an opportunity to draft clearer instructions or submit a special verdict form.

The defendant responds that there was no prejudice to the plaintiff, because the verdict does not evidence confusion.

The questions submitted by the jury were as follows:

First Cause of Action pg 4

C. Effect of Findings first paragraph —

Does this mean that if we do not find for the Plaintiff unanimously on all 5 propositions that we find in favor of the defendant?

First Cause of Action pg 3

B. Burden of Proof —

(1.) Can we find that there was an agreement between Plaintiff & Defendant for Defendant to manufacture Dune Buggies, but not address the specifics of the contract i.e. that defendant was to supply all materials?

Second Cause of Action pg 4

Is consideration of Second Cause of Action contingent on finding in favor of Plaintiff in First Cause of Action?

Can we find for the Defendant in First Cause and for the Plaintiff in Second Cause?

The trial court gave the following instructions. Instruction No. 2 stated the plaintiff's allegations that the parties had entered into an oral contract in which the defendant agreed to manufacture the running gear and supply all material for 10 dune buggies for $350 per unit. It further stated that the plaintiff alleged the defendant had failed to provide required materials, forcing the plaintiff to provide them at a cost of $1,619.03. It also stated that the plaintiff alleged the defendant had failed to perform in a workmanlike manner, in that the buggies failed to operate properly for their intended purpose and required the plaintiff to purchase additional parts at a cost of $991.11. It also stated that the plaintiff alleged that proper notice of the defects had been given to the defendant, and claimed damages in the amount of $2,610.14 for the breach.

Instruction No. 2 also set out the defendant's answer. This

included allegations the defendant had agreed to manufacture a chassis with front hubs, steering gear, and disk brakes; the provision for specific materials, but not all materials; and that the plaintiff had made substantial changes in its requests, which the defendant agreed to supply on the basis of cost of parts plus labor. It also stated the defendant denied a failure to perform in a workmanlike manner and that the plaintiff had failed to provide reasonable notice.

The instruction also contained the plaintiff's burden of proof. The jury was instructed that, on the first cause of action, the plaintiff had to prove, by a preponderance of the evidence, all of the following:

1. That the parties had entered into an oral contract in September 1978, in which the defendant had agreed to supply all material and manufacture the running gear for 10 dune buggies for $350 per unit;

2. that plaintiff had performed its duties under the contract;

3. that the defendant had failed to provide materials as agreed and failed to perform in a workmanlike manner;

4. that plaintiff gave notice to the defendant within a reasonable time after discovering the alleged breaches; and

5. that as a result of the breach the plaintiff sustained damages.

The jury was instructed that if the plaintiff failed to prove any one or more of the propositions set forth above, the verdict would be for the defendant.

As to the second cause of action, the jury was instructed that the plaintiff was seeking to recover overcharges in the amount of $5,169.65 and that to recover that amount the plaintiff had to prove:

1. That the defendant had received money from the plaintiff;

2. that the defendant retained possession of the money; and

3. that the defendant "in justice and fairness" ought to refund it.

The jury was further instructed that if the plaintiff failed to establish any of those elements by a preponderance of evidence, the verdict should be for the defendant.

The jury was instructed, in instruction No. 16, to award damages to the plaintiff on the second cause of action in an

amount which would "fairly and reasonably" compensate the plaintiff for any damages in excess of the contract price. As to damages on the first cause of action, instruction No. 15 instructed the jury to consider the cost of materials provided by the plaintiff and the cost of repairs due to the defendant's failure to perform in a workmanlike manner.

The jury's first question regarding the instructions was whether the jury had to find for the plaintiff on all five propositions in order to find in favor of the plaintiff on the first cause of action. This question was clearly answered by instruction No. 2, part I(C), which instructed the jury that the plaintiff had to establish all five propositions in order to prevail.

The second question was whether the jury could find for the plaintiff on a portion of instruction No. 2, part I(B)1, that there was a contract, but not make a finding as to its terms. That question was also answered by the instruction, which clearly stated the jury must find in favor of the plaintiff as to both the existence of the contract and its terms.

The third question was whether consideration of the second cause of action was contingent on a finding in favor of the plaintiff on the first cause of action. A fair reading of instruction No. 2 reveals the jury was instructed separately on each cause of action, and no contingency was expressed or implied.

The fourth question was whether the jury could find in favor of the defendant on the first cause of action and for the plaintiff on the second cause of action. The jury was instructed separately on each cause of action, and in the "effect of findings" portions of the instruction the trial court clearly stated that the jury could find in favor of either party.

In *In re Estate of Corbett*, 211 Neb. 335, 318 N.W.2d 720 (1982), we held it was error to instruct a jury, after it had retired to deliberate, out of the presence of the parties and their counsel, but if it clearly appears prejudice did not and could not flow from such error, there was no ground for reversal. In this case the trial court did not further instruct the jury but responded that the questions could be answered by rereading the instructions, and the instructions did answer the questions.

The trial court's response to the jury's questions did not prejudice the plaintiff, because the jury's questions pertained to portions of the jury instructions which had not been objected to at trial, and did not relate to the calculation of damages. The assignment of error is overruled.

The plaintiff's final contention is that the trial court erred in instructing the jury on the second cause of action. Specifically, the plaintiff argues instruction No. 16 instructed the jury to fix an amount that would fairly and reasonably compensate the plaintiff for any overcharge, while the language in instruction No. 2 spoke in terms of "justice and fairness." The plaintiff claims this effectively changed the action from one for a sum certain to an equitable action.

At the conference on jury instructions the court stated:

> The Court is convinced that the second cause of action is an action at law. However, my research has indicated that the proper elements of an action for money retained such as is pled in the second cause of action is as set forth in paragraphs 1, 2, and 3 of the burden of proof on page 5 of Instruction 2 and that even though the language justice and fairness sounds like equity, that this is still a law action and that it should be submitted to the jury on that language.

The plaintiff argues that the use of such language permitted the jury to incorrectly interpose equitable considerations, and constituted an abuse of discretion.

The plaintiff's representative, Harry Hartley, testified that the amount of damages sought to be recovered on the second cause of action included "all costs up to receiving the cars in addition to the motion [sic] plates, gussets and bearings being installed." For the installation of the motor plates or braces and bearings the defendant required the plaintiff to pay $180 and required $32.76 for throttle cable, which was delivered after the plaintiff had taken delivery of the buggies and had made its final payment. The jury may have concluded that the defendant overcharged the plaintiff for these items, because there was evidence the defendant was informed at the time of delivery that a motor brace would be required to ensure that the buggies would perform and the throttle cable was required but it had

not yet been delivered to the defendant. The jury could have found that since these parts should have been provided by the defendant for the original contract price, the defendant should refund $212.76. These were issues of fact which were within the province of the jury. *Chirnside v. Lincoln Tel. & Tel. Co.,* 224 Neb. 784, 401 N.W.2d 489 (1987).

The plaintiff's argument that the language used by the trial court was improper is also unpersuasive. Whenever a person has possession of money to which in equity and good conscience another is entitled, a suit lies for money had and received. In such a case the law implies a promise by the former to pay such money to the latter. *Village of Morrill v. Roosevelt P.P. Dist.,* 215 Neb. 41, 337 N.W.2d 125 (1983); *Barker v. Wardens & Vestrymen of St. Barnabas Church,* 171 Neb. 574, 106 N.W.2d 858 (1961).

The judgment of the trial court is affirmed.

AFFIRMED.