IN RE PETITION OF OMAHA PUBLIC POWER DISTRICT.
OMAHA PUBLIC POWER DISTRICT, A PUBLIC CORPORATION,
APPELLEE, V. TRACT NO. 1 ET AL., APPELLANTS.
680 N.W.2d 128

Filed May 28, 2004. No. S-02-899.

William G. Dittrick, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, and J. Patrick Green for appellants.

Roger L. Shiffermiller and Timothy J. Thalken, of Fraser, Stryker, Meusey, Olson, Boyer & Bloch, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## I. NATURE OF CASE

Duane J. Dowd, Frances D. Dowd, Frank W. Bemis, Connie B. Bemis, and Roberta F. Bemis, condemnees in a condemnation action brought by the Omaha Public Power District (OPPD), appeal an order denying their motion for new trial following a jury verdict awarding damages in their favor. Condemnees allege that the district court for Sarpy County communicated with the jury after it retired to deliberate, that the jury awarded inadequate damages, and that juror misconduct occurred. We affirm.

## II. BACKGROUND

Condemnees are the owners of a tract of land located on the southwest corner of 156th Street and Giles Road in Sarpy County, Nebraska (Dowd/Bemis property). According to testimony at trial, the Dowd/Bemis property is approximately 68 acres, which is adjacent to a very large area of parkland and lake otherwise known as the Chalco Hills Recreation Area. On January 22, 1999, OPPD filed a petition for condemnation to condemn a permanent right-of-way easement consisting of 1.49 acres of the Dowd/Bemis property for the purpose of constructing a 345,000-volt electric powerline along the border of the property. On July 15, condemnees filed an appeal in the district court for Sarpy County. Condemnees alleged that as owners of the Dowd/Bemis property, which property OPPD sought to condemn and acquire by eminent domain, the $30,000 sum awarded for the taking of their property was neither fair nor adequate. The case ultimately proceeded to trial, and the jury returned a verdict in favor of condemnees.

During trial, condemnees produced testimony regarding the nature of the easement and the property subject to the easement. Randal L. Samson, at the time of the condemnation of the Dowd/Bemis property, was the manager of transmission engineering with OPPD. He described the Dowd/Bemis property as having four power poles 135 to 140 feet in height, approximately 3½ feet in diameter, and currently carrying seven total wires. The lines attached to the poles on the Dowd/Bemis property were 345,000-volt lines, which were the largest transmission lines used by OPPD in either Douglas County or Sarpy County. The transmission lines had already been constructed on the Dowd/Bemis property at the time OPPD filed its condemnation action.

Condemnees also called appraisal expert Leroy L. Verschuur. Verschuur testified that the easement placed no limits on the number of poles OPPD could erect on the Dowd/Bemis property, the height of the poles, or the number of wires that could be placed on the poles. Verschuur noted that OPPD had erected four poles on the easement property. Verschuur also testified that the easement placed no limit on how much power OPPD could push through the lines and that the easement gave OPPD control over access to the property. Using the comparable sales approach,

Verschuur calculated the value of the 1.49-acre parcel subject to the easement at $31,290. Calculating damages to the remaining property as a result of the easement at $391,000, Verschuur calculated total damages to condemnees at $422,000. OPPD's expert appraiser, Thomas E. Stevens, agreed that, after the taking, the Dowd/Bemis property no longer had unlimited access rights, but Stevens testified that he did not feel this influenced the value of the property. Instead, Stevens limited his valuation of condemnees' property to current use only and valued condemnees' damages at $29,800.

After considering the evidence, the jury returned a verdict for condemnees of $31,290, on which judgment was entered. Condemnees subsequently filed a motion for new trial alleging, inter alia, juror misconduct, trial court error, and inadequate damages. With respect to their claim of trial court error, condemnees contended that the court, after jury deliberations began and following a written question from the jury, gave an oral explanation of a jury instruction to the jury. This was done without notification to or consent of counsel, and without reducing the explanation to writing. The written question was given back to the jury and has not been located. Condemnees offered juror testimony, and both parties offered juror affidavits in support of their respective positions relative to condemnees' motion for new trial. The trial court denied the motion for new trial. Additional facts relevant to each of condemnees' contentions in this appeal will be discussed later in this opinion. Condemnees timely appealed, and we moved the case to our docket pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

### III. ASSIGNMENTS OF ERROR

It is noted that all of condemnees' assignments of error relate to the trial court's order denying condemnees' motion for new trial. Condemnees assign, restated, that the trial court erred in (1) denying their motion for new trial; (2) finding that its decision to confer with the jury in the jury room after deliberations had begun, outside the presence of counsel, without having the jury's question or the court's discussion with the jury recorded, and

without having the court's response permanently memorialized, was not prejudicial; (3) finding that a statement made by a juror, who was an electrical engineer, to the jury during deliberations that a 345,000-volt transmission line and a 161,000-volt transmission line were the same did not go to a material issue in the case and was not prejudicial; (4) concluding that a visit by one of the jurors to the condemnation site was not material and, therefore, not prejudicial; and (5) failing to find the jury awarded inadequate damages, thereby justifying a new trial.

Although condemnees' assignments of error Nos. 2 through 4, as set forth in their brief, claim that the trial court found harmless error, we will examine the actions of the trial court for error and whether such error was prejudicial.

## IV. STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Perry Lumber Co. v. Durable Servs.*, 266 Neb. 517, 667 N.W.2d 194 (2003); *Loving v. Baker's Supermarkets*, 238 Neb. 727, 472 N.W.2d 695 (1991).

A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through the judicial system. *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998); *Kaminski v. Bass*, 252 Neb. 760, 567 N.W.2d 118 (1997).

## V. ANALYSIS

### 1. JUDICIAL MISCONDUCT

In restated assignment of error No. 2, condemnees contend that the trial court erred in answering a written question from the jury after the jury had retired, orally and out of the presence of and without notice to counsel, and without a court reporter present to preserve the discussion and the written question and response of the court. Condemnees further claim that because the nature and extent of the court's conversation with the jury is not clear from the record, prejudice should be presumed, thereby necessitating a new trial.

Condemnees offered the testimony and affidavits of jurors J.W. and A.H. in support of their motion for new trial. Juror J.W.'s affidavit states that during deliberations, the jury sent a written question to the trial judge relating to the jury instruction that addressed the " 'full extent of the easement.' " Juror J.W.'s affidavit further states that "[t]he judge then came in and orally talked to the jury about this question." During the hearing on the motion, juror J.W. testified as follows:

Q Okay. Do you remember what that question was, sir?
A It had to do with the easement.
Q Okay.
A Size of the easement.
. . . .
Q Can you tell me, to the best of your recollection, what the question was?
A As I remember, we were discussing the easement itself, and we wanted to know what it covered exactly.

Juror A.H.'s affidavit states that "[d]uring the actual jury deliberation of this matter, the jury sent a written question to the Judge about the instruction dealing with 'the full extent of the easement' and to what land this applied to. [The trial judge] then orally talked to the jury about this question."

■ OPPD objected to both jurors J.W.'s and A.H.'s affidavits on the bases of relevance and that the statements therein constitute interdeliberational statements of the jury. The trial court overruled these objections. OPPD did not cross-appeal and assign the trial court's ruling as error, and therefore, we do not consider the objections. See *Loontjer v. Robinson*, 266 Neb. 902, 670 N.W.2d 301 (2003) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief of party assigning error).

OPPD offered the affidavits of jurors C.B. and A.W. Jurors C.B.'s and A.W.'s affidavits both state in paragraph 2 that "[d]uring jury deliberation of this matter, the jury sent a written question to the Judge. In response to this question, the Judge came into the jury room and told the members of the jury to refer to the jury instructions previously given." No objection was made to paragraph 2 of these juror affidavits.

The only dispute in this case is damages. Specifically, condemnees contend that the damage award may have been adversely affected by the trial court's failure to notify condemnees and give them the opportunity to request appropriate supplemental jury instructions.

Neb. Rev. Stat. § 25-1115 (Reissue 1995) provides:

No oral explanation of any instruction authorized by the preceding sections shall, in any case, be allowed, and any instruction or charge, or any portion of a charge or instructions, given to the jury by the court and not reduced to writing, as aforesaid, or a neglect or refusal on the part of the court to perform any duty enjoined by the preceding sections, shall be error in the trial of the case, and sufficient cause for the reversal of the judgment rendered therein.

Neb. Rev. Stat. § 25-1116 (Reissue 1995) provides:

After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where the information upon the point of law shall be given, and the court may give its recollection as to the testimony on the point in dispute in the presence of or after notice to the parties or their counsel.

Although condemnees have asserted as error a violation of §§ 25-1115 and 25-1116, we have determined that directing a jury to reread properly given instructions is not an instruction as contemplated by § 25-1115. See *Sesostris Temple Golden Dunes v. Schuman*, 226 Neb. 7, 409 N.W.2d 298 (1987) (determining trial court did not further instruct jury when it told them to reread jury instructions previously given). As such, § 25-1115 is inapplicable here. However, pursuant to § 25-1116, we conclude that the trial court committed error (1) in answering the jury's question without notice to the parties or their counsel in violation of § 25-1116 and (2) in addressing the jury's question in the jury room as opposed to open court as required by § 25-1116. However, we will conclude in this opinion that these errors are not prejudicial.

We have previously concluded that it is not necessarily *prejudicial* error for a court, without notice to and outside the

presence of counsel and after deliberations have already begun, to direct the jury to consider the instructions previously given. See, *Sesostris Temple Golden Dunes v. Schuman, supra*; *Hansen v. Hasenkamp*, 192 Neb. 530, 223 N.W.2d 44 (1974); *Anderson v. Evans*, 168 Neb. 373, 96 N.W.2d 44 (1959). In *Sesostris Temple Golden Dunes*, after deliberations began, the jury submitted several questions to the trial court. Without notifying counsel, the trial court responded to the jury's requests by stating, " 'Reread the instructions. The answers to your questions can be found there.' " *Sesostris Temple Golden Dunes v. Schuman*, 226 Neb. at 11, 409 N.W.2d at 301. On appeal, plaintiff contended that the trial court erred in failing to notify counsel of the jury's questions submitted during deliberations, resulting in prejudice to plaintiff. Plaintiff contended that counsel should have been given an opportunity to draft clearer instructions or submit a special verdict form. Finding plaintiff's assignment without merit, we noted that the jury instructions initially given to the jury before retiring to deliberations did answer the jury's subsequent questions to the trial court. We concluded that plaintiff was not prejudiced by the court's response to the jury's question. *Id.* Thus, in the instant case, if the jury instructions given were correct, then the trial court's action of directing the jury, without notice to and outside the presence of counsel, to refer to the instructions previously given was not prejudicial.

This condemnation case involves the taking of an easement. As such, NJI2d Civ. 13.06, applicable to easements, is the appropriate instruction.

NJI2d Civ. 13.06 states:

### III. Owner's Compensation

The plaintiff is entitled to recover the difference[, if any,] between the fair market value of the property before the easement was taken and its fair market value after the easement was taken. In addition, the plaintiff is entitled to recover (his, her, its) reasonable abstracting expenses.

The instructions given in this case regarding the method of determining condemnees' damages is contained in instruction No. 2, under "C. Burden of Proof." This instruction states: "The Condemnees are entitled to recover the difference between the fair market value of it's [sic] property before the easement was taken,

and it's [sic] fair market value after the easement was taken." A review of the record shows that condemnees objected to instruction No. 2 on only two grounds. First, condemnees requested that the word "immediately" be added before the phrase "after the easement was taken." Condemnees also objected to the language found in instruction No. 2 relating to the purpose for the condemnation, which is not an issue in this case, and requested that its proposed jury instruction No. 2 be used instead. However, jury instruction No. 2 given by the trial court was the appropriate instruction.

In *Ward v. Nebraska Electric G. & T. Coop., Inc.*, 195 Neb. 641, 240 N.W.2d 18 (1976), we held that the measure of damages for the taking of an easement is the difference in the reasonable market value of the property before and after the taking of the easement. See, also, *Fulmer v. State*, 178 Neb. 664, 134 N.W.2d 798 (1965). We conclude that instruction No. 2 with regard to the measure of damages correctly states the law, was not misleading, and adequately covered the issue. See, *Maxwell v. Montey*, 262 Neb. 160, 631 N.W.2d 455 (2001); *Springer v. Bohling*, 259 Neb. 71, 607 N.W.2d 836 (2000).

The trial court's failure to record the jury's question requires us to speculate as to which jury instruction or instructions may have been implicated, if at all, by the jury's question. It is, however, condemnees' contention that the central issue on appeal relates to the jury's failure to award condemnees remainder or severance damages. The instructions to the jury regarding calculation of damages are found in jury instruction No. 2 given by the court. We have already determined that instruction No. 2 comports with NJI2d Civ. 13.06, which sets forth the method of calculating damages in an action involving condemnation of an easement. Therefore, rereading the instructions in this case, as the trial court directed the jury to do, would produce a jury properly instructed.

Condemnees contend that if they had been notified of the jurors' question, they could have requested a supplemental instruction. A supplemental instruction is one which would have been proper in the first charge. *Hofrichter v. Kiewit-Condon-Cunningham*, 147 Neb. 224, 22 N.W.2d 703 (1946). In the instant case, however, we have already determined that the instructions given to the jury in the first charge were the correct instructions.

■ The complaining party bears the burden of proving both that an unauthorized private communication occurred and that the complaining party suffered prejudice as a result. See *In re Estate of Corbett*, 211 Neb. 335, 318 N.W.2d 720 (1982) (concluding communication between court and jury was harmless error where appellant failed to show prejudice).

As previously stated, we have concluded that an unauthorized communication occurred in this case. We now determine that the condemnees failed to meet their burden of establishing that they were prejudiced by the trial court's errors noted above. Because condemnees failed to meet their burden of proving prejudice, the trial court's decision on restated assignment of error No. 2 was not an abuse of discretion.

## 2. JUROR MISCONDUCT

■ Condemnees advance two grounds upon which the trial court should have found juror misconduct and granted condemnees' motion for new trial. Condemnees contend, first, that a juror gave expert testimony during deliberations and, second, that another juror made an unauthorized viewing of the Dowd/Bemis property. An application for new trial may properly be based upon allegations of misconduct of the jury. See, Neb. Rev. Stat. § 25-1142 (Cum. Supp. 2002); *Leavitt v. Magid*, 257 Neb. 440, 598 N.W.2d 722 (1999). In a motion for new trial, allegations of misconduct by jurors must be substantiated by competent evidence. *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998); *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). The misconduct complained of must relate to a disputed matter that is relevant to the issues in the case and must have influenced the jurors in arriving at the verdict. *Smith v. Papio-Missouri River NRD, supra*. In order for a new trial to be ordered because of juror misconduct, the party claiming the misconduct has the burden to show by clear and convincing evidence that prejudice has occurred. *Hunt v. Methodist Hosp.*, 240 Neb. 838, 485 N.W.2d 737 (1992). The trial court's ruling on a question involving jury misconduct will not be disturbed on appeal absent an abuse of discretion. See, *id.*; *Auer v. Burlington Northern RR. Co.*, 229 Neb. 504, 428 N.W.2d 152 (1988).

## (a) Juror's Statement Based on Personal Knowledge

Condemnees argue that juror C.B., who was an electrical engineer, impermissibly testified as an expert in the jury room to facts contrary to those brought forth at trial. Specifically, condemnees contend that juror C.B. told the other members of the jury during deliberations that he was an electrical engineer and that there was no difference between 345,000-volt and 161,000-volt transmission lines. Juror J.W.'s affidavit states that "[d]uring the deliberations, there were statements made by the electrical engineer on the jury about the sameness of 161KV lines and 345 KV lines." During the hearing on the motion, juror J.W. testified that juror C.B. told the jury that there was no difference between 345,000-volt and 161,000-volt lines with respect to their effect on people living near them and that juror J.W. responded by calling juror C.B. a liar. Juror A.H.'s affidavit states that "[d]uring the deliberations, there were statements made by the electrical engineer on the jury that there was no difference between 161KV lines and 345 KV lines. There was a heated discussion about this statement."

Neb. Evid. R. 606(2), Neb. Rev. Stat. § 27-606(2) (Reissue 1995), provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

Rule 606(2) does not equate with, or govern, grounds for a new trial, but merely governs the competency of jurors to testify concerning the jury process. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

54

 Under rule 606(2), a juror may testify as to whether the jury considered prejudicial information emanating from a source other than evidence presented at trial, but a juror's testimony may not be used to establish the effect of such information upon the jury or its influence on the jury or jury motives, methods, misunderstandings, thought processes, or discussions during deliberations which entered into the verdict. *Hunt v. Methodist Hosp.*, 240 Neb. 838, 485 N.W.2d 737 (1992); *Rahmig v. Mosley Machinery Co., supra.* Thus, extraneous material or information considered by a jury may be deemed prejudicial without proof of actual prejudice if the material or information relates to an issue submitted to the jury and there is a reasonable possibility that the extraneous material or information affected the verdict to the detriment of a litigant. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993); *Loving v. Baker's Supermarkets*, 238 Neb. 727, 472 N.W.2d 695 (1991).

In determining whether we may consider that portion of the jurors' affidavits relating to juror C.B.'s statement in support of condemnees' claim of juror misconduct, we analyze whether juror C.B.'s statement constituted extraneous prejudicial information. In its opinion and order, the trial court found that the factual circumstances of this case did not directly relate to the difference between 345,000-volt and 161,000-volt lines. Based upon our review of the record, we conclude that condemnees failed to prove prejudice as required by rule 606(2). Juror C.B.'s statement did not relate to an issue submitted to the jury and, accordingly, could not have affected the verdict.

Condemnees contend that the issue at trial related to "the relative impact of different possible electromagnetic fields on valuation of property." Brief for appellants at 26. Condemnees failed, however, to produce evidence proving any damages resulting from the placement of a 345,000-volt powerline on the Dowd/Bemis property versus a 161,000-volt powerline. The testimony at trial established that the 345,000-volt line is OPPD's largest transmission line in both Douglas County and Sarpy County. Samson, the manager of transmission engineering with OPPD, testified at trial that volts are "the electromotive force that pushes electrons down the wire. The higher the voltage, the higher the force to push them." Thus, volts represent the force behind the power flowing

down the line. Condemnees' evidence did not draw any connection between voltage and the corresponding effect electromagnetic fields may have on property values.

Samson further testified that OPPD has gathered information relating to the public's concern regarding the aesthetics and location of powerlines as well as concerns about electric and magnetic fields. Based on this information, Samson testified that when OPPD plans to site or lay a transmission line, it evaluates the proximity to homes, businesses, and other existing facilities. Condemnees, however, did not produce any testimony or evidence that the public's concerns are heightened and have a greater corresponding impact on property values with the placement of a 345,000-volt line rather than a 161,000-volt line.

Condemnees' expert, Verschuur, testified that developers developing property with 161,000-volt lines have incurred additional costs to visually screen out powerlines, such as by using fences, bushes, and trees. However, condemnees failed to produce evidence that 345,000-volt lines are any different in size or appearance than 161,000-volt lines. Verschuur testified only that a 161,000-volt line is "two and a half times smaller" than a 345,000-volt line. On cross-examination, Verschuur admitted that this comparison had nothing to do with the size of the structures or size of the lines. Verschuur admitted that he had no idea and was not qualified to state whether this comparison had any significance whatsoever other than as a mathematical computation. While Verschuur provided testimony tending to establish that property values are adversely affected by powerlines, condemnees did not put on evidence to establish that a 345,000-volt line has a larger detrimental effect on the market value of property compared to a 161,000-volt line.

The issue at trial in this case centered around the impact on market value of the placement of powerlines on real property. While condemnees did offer some evidence regarding the public's concern regarding electromagnetic fields, condemnees did not offer evidence establishing that higher voltage powerlines lead to heightened public concern regarding electromagnetic fields. Nor did condemnees establish that higher voltage powerlines have a greater detrimental impact on property values. Because of condemnees' failure of proof in this regard, condemnees would not

have been entitled to a damage award on this basis. Juror C.B.'s statement did not relate to an issue submitted to the jury and there is no reasonable possibility that the statement detrimentally affected the verdict.

Condemnees failed to meet their burden of proving prejudice under rule 606(2). Accordingly, the juror affidavits and testimony are not sufficient to impeach the jury's verdict. Because no competent evidence exists to establish condemnees' claim of juror misconduct, the trial court did not abuse its discretion in denying condemnees' motion for new trial.

### (b) Unauthorized View of Property

For their fourth assignment of error, condemnees contend that during trial, and contrary to the trial court's admonitions, juror J.W. viewed the Dowd/Bemis property, by himself, without notice to any party, and without being accompanied by any court personnel. Juror J.W.'s affidavit states that "[d]uring the trial of this case, I drove out to the property in question, owned by the Dowd and Bemis families, and looked at the same. I told the other jurors that I had done the same."

As previously observed, in a motion for new trial, allegations of misconduct must relate to a disputed matter that is relevant to the issues in the case and must have influenced the jurors in arriving at the verdict. *Smith v. Papio-Missouri River NRD*, 254 Neb. 405, 576 N.W.2d 797 (1998). In order for a new trial to be ordered because of juror misconduct, the party claiming the misconduct has the burden to show by clear and convincing evidence that prejudice has occurred. *Hunt v. Methodist Hosp.*, 240 Neb. 838, 485 N.W.2d 737 (1992).

Juror J.W.'s affidavit constitutes the sole source of support for this claim of juror misconduct. Before we resolve the issue of juror misconduct, however, we must first determine whether juror J.W.'s affidavit is admissible evidence pursuant to rule 606(2). That is, we must determine whether juror J.W.'s affidavit contains information related to one of the two exceptions provided by rule 606(2), i.e., (1) extraneous prejudicial information improperly brought to the jury's attention or (2) outside influence improperly brought to bear on a juror. See *Leavitt v. Magid*, 257 Neb. 440, 598 N.W.2d 722 (1999). Condemnees do

not contend that an outside influence was improperly brought to bear on a juror. Therefore, we must determine whether the allegations contained in juror J.W.'s affidavit constitute extraneous prejudicial information.

For purposes of rule 606(2), while one may not inquire as to whether the presence of the evidence affected the juror's mind, it is proper and necessary that evidence be presented by the objecting party to show that *extraneous prejudicial* information was improperly brought to the jury's attention. *State v. Woodward*, 210 Neb. 740, 316 N.W.2d 759 (1982). In *Woodward*, we stated that where the record failed to establish that extraneous prejudicial information was improperly brought to the jury's attention, a juror's unauthorized view of the scene was not prejudicial. In *Woodward*, the defendant was tried for burglarizing a gas station. During deliberations, the jury traveled to dinner and passed through the intersection where the crime took place. One of the jurors testified that he could not recall any comment being made about the intersection, and another juror did recall that some comment was made about what could or could not be seen, but could not recall specifically what the comment was. We noted that without evidence establishing what was said by the jurors regarding what they saw, there was no way to determine if what they saw was prejudicial.

Likewise, in the instant case, the record does not reveal anything regarding juror J.W.'s unauthorized view of the property. All the record shows is that juror J.W. drove out to the Dowd/Bemis property and looked at it. The record reveals nothing regarding what juror J.W. saw or the observations he may or may not have made. Moreover, to the extent juror J.W. made any observations, he did not communicate them to the other members of the jury.

We also observe that the fact the Dowd/Bemis property appeared as it was described at trial minimizes any claim of prejudice. In *Kohrt v. Hammond*, 160 Neb. 347, 70 N.W.2d 102 (1955), we concluded that a juror's unauthorized view of the scene of an automobile accident was not prejudicial where there was no dispute in the evidence regarding the matters observed by the juror. By contrast, in *Kremlacek v. Sedlacek*, 190 Neb. 460, 209 N.W.2d 149 (1973), we held that an unauthorized view by a

juror was prejudicial error warranting the granting of a new trial where the juror's view of the scene differed from testimony at trial. In *Kremlacek*, an action for damages sustained in an automobile accident, we noted that a crucial issue involved the location of a row of seven red cedar trees on the south side of the east-west road. On a motion for new trial, a juror's affidavit offered and received into evidence stated that he had driven out to the scene of the accident during the trial, had observed the scene of the accident, and that in his opinion, the trees located near the scene of the accident were farther back from the corner of the intersection than the testimony indicated. We concluded that the evidence was amply sufficient to sustain the trial court's finding that prejudicial error occurred.

Unlike *Kremlacek*, juror J.W.'s view of the Dowd/Bemis property would have been entirely consonant with the evidence offered at trial describing the property. Juror J.W. made his unauthorized view of the subject property during the trial of this case. The construction of OPPD's powerlines on the Dowd/Bemis property was completed before this condemnation action was filed. Moreover, there was no dispute at trial regarding the description of the Dowd/Bemis property and its landscape. Accordingly, to the extent juror J.W. drove to and looked at some part of the Dowd/Bemis property, the land would have looked no different than how it was described at trial.

As previously stated, rule 606(2) permits use of a juror's affidavit to establish that the jury considered prejudicial information emanating from a source other than evidence presented at trial. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). Rule 606(2) does not equate with, or govern, grounds for a new trial, but merely governs the competency of jurors to testify concerning the jury process. *Rahmig v. Mosley Machinery Co., supra*. Because condemnees failed to fulfill their burden of demonstrating prejudice, juror J.W.'s affidavit is not admissible to impeach the jury's verdict. As such, condemnees have no competent evidence with which to establish this claim of juror misconduct. The trial court did not abuse its discretion in denying condemnees' motion for new trial on this basis. We find this assignment of error to be equally without merit.

### 3. INADEQUATE DAMAGES

For their final assignment of error, condemnees contend that the trial court erred by failing to find the jury awarded inadequate damages thereby justifying a new trial. On appeal, the fact finder's determination of damages is given great deference. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993) (citing *Schuessler v. Benchmark Mktg. & Consulting*, 243 Neb. 425, 500 N.W.2d 529 (1993)). The amount of damages is a matter solely for the fact finder, whose action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of damages proved. *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001). However, an award of damages may be set aside as excessive or inadequate when, and not unless, it is so excessive or inadequate as to be the result of passion, prejudice, mistake, or some other means not apparent in the record. *Norman v. Ogallala Pub. Sch. Dist.*, 259 Neb. 184, 609 N.W.2d 338 (2000).

Regarding whether the damages award was supported by the evidence, we stated in *Patterson v. City of Lincoln*, 250 Neb. 382, 388, 550 N.W.2d 650, 655 (1996), a condemnation case, that

> an expert witness, when properly qualified, may testify as to the valuation of the property, and the weight and credibility of what the witness considers in coming to his conclusion is for the jury to determine. . . .
>
> The jury verdict fell in between the two conflicting sets of expert testimony. The expert witness testimony is not binding on the triers of fact. The amount of damages sustained is peculiarly of a local nature and ordinarily is to be determined by the jury, and this court will not ordinarily interfere with the verdict if it was based upon admissible testimony. When the evidence is conflicting, the verdict of the jury will not be set aside unless it is clearly wrong.

Here, Stevens testified that condemnees' total damages were $29,800 and Verschuur valued total damages at $422,000. Thus, the jury's damage award of $31,290, fell between the range of damage estimates proffered by both parties' experts during trial. Moreover, the damages awarded by the jury were identical to the $31,290 Verschuur assigned to the value of the easement. We

conclude, therefore, that the jury's award was supported by the evidence. This assignment of error is also without merit.

## VI. CONCLUSION

We conclude that condemnees failed to establish prejudice as a result of the trial court's unauthorized private communication with the jury during deliberations. Moreover, condemnees failed to produce any competent evidence in support of their claims of juror misconduct. Finally, we conclude that the damages awarded were not inadequate. Accordingly, the trial court did not abuse its discretion in overruling condemnees' motion for new trial.

AFFIRMED.