JOE KOPECKY AND MICHELE KOPECKY, HUSBAND AND WIFE, APPELLEES, V. NATIONAL FARMS, INC., A DELAWARE CORPORATION, DOING BUSINESS AS NATIONAL FARM PRODUCTS, AND O.N. CORPORATION, A NEBRASKA CORPORATION, APPELLANTS.

510 N.W.2d 41

Filed January 7, 1994.    No. S-91-633.

David A. Domina, of Domina & Copple, P.C., for appellants.

Steven D. Burns, of Burns & Associates, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

LANPHIER, J.

National Farms, Inc., and its wholly owned subsidiary O.N. Corporation appeal the rulings and judgment of the Holt County District Court whereby, following a trial to a jury, their

swine-raising operation was determined to be a private nuisance because of odor and flies, and the appellees, Joe and Michele Kopecky, were awarded damages. National Farms and O.N. claim the district court erred in refusing their offer to present evidence to the jury on the social utility of their swine-raising operation and by improperly instructing the jury on the issues of nuisance and damages. National Farms and O.N. claim the district court erred in granting partial summary judgment against them based on an earlier nuisance suit in which their swine-raising facility was determined to constitute a nuisance. National Farms and O.N. claim the district court erred in allowing evidence of a Colorado swine-raising facility operated by an affiliate corporation and in not allowing the jury to inspect the Holt County operation. National Farms and O.N. submit an affidavit and allege juror misconduct.

## BACKGROUND

At the time of trial, Joe and Michele Kopecky resided about $2^1/_4$ miles northwest of National Farms and O.N.'s swine-raising facility. The Kopeckys complained that from August 15, 1985, to August 15, 1989, National Farms and O.N.'s means of disposing of the waste (manure and urine) from the 85,000 to 90,000 animals housed in the facility created a nuisance: an intolerable odor and an unreasonable number of flies.

National Farms and O.N. used water to flush the animal waste out of each confinement building. The waste was then passed over a system of screens which separated the solid waste from the liquid waste. A manure spreader was used to distribute the solid waste over adjacent fields owned by National Farms and O.N. The liquid waste was pumped into a series of lagoons. During the growing season, the liquid waste from the lagoons was mixed with varying amounts of water, and center-pivot irrigation systems sprayed the mixture over National Farms and O.N.'s fields. During the winter, the liquid waste was stored in the lagoons.

The Kopeckys claimed it was this method of waste utilization and removal which created an intolerable odor and an unreasonable number of flies at their home. Michele Kopecky

described the odor as a "gagging smell . . . a nauseating, burning odor." Joe Kopecky, who previously worked for National Farms and O.N. and was familiar with the odors associated with hog production, testified that the odor was "very strong" as compared to what he would normally expect from a typical swine-raising operation. He also testified that since National Farms and O.N.'s swine-raising facility was built, the number of flies at the Kopeckys' home had increased. Michele Kopecky testified that the odor and the number of flies interfered with the use of their home. She testified that when she smelled the odor, she would go into the house and close all the windows. However, she testified that even this did not always keep the odor out. She also testified that her children had been forced to play inside because of the odor and that the Kopeckys could no longer have family picnics.

Subsequently, the Kopeckys brought this action for nuisance. Prior to trial, the district court granted partial summary judgment, determining that a 1986 case, Kaup v. National Farms, Inc., and O.N. Corporation, Holt County District Court, case No. 18235, established (1) that during the period from August 15, 1985, to September 18, 1986, an unreasonable amount of odor and flies came from the National Farms and O.N. swine-raising facility; (2) that during the period from August 15, 1985, to September 18, 1986, National Farms and O.N. were operating the facility with the knowledge that the unreasonable odor and flies interfered with the use and enjoyment of some surrounding property; and (3) that during any period of time from August 15, 1985, to the date of the verdict in that case, National Farms and O.N. were legally responsible for any damage that any person received from unreasonable odor or flies coming from the swine-raising facility.

Also prior to trial, National Farms and O.N., pursuant to Neb. Rev. Stat. § 25-1108 (Reissue 1989), moved to allow the jury to inspect their swine-raising facility. At trial, the motion was renewed, but was denied.

Over the objection of National Farms and O.N., the court received evidence offered by the Kopeckys on a Colorado swine-raising facility operated by another wholly owned

subsidiary of National Farms.

At trial, National Farms and O.N. offered evidence on the economic impact and social utility of their swine-raising operation, but the court refused this evidence.

After the jury returned its verdict, National Farms and O.N. moved for a new trial, offering an affidavit of the jury foreperson as evidence of jury misconduct. The affidavit stated that the jury awarded damages of $500 per day for each "smelly" day and $100 per day for all other days. The affidavit was refused, and the motion was denied.

## ASSIGNMENTS OF ERROR

National Farms contends that the district court erred (1) in granting partial summary judgment in favor of the Kopeckys, (2) in overruling National Farms and O.N.'s motion for inspection of the subject premises pursuant to § 25-1108, (3) in permitting discovery and introduction of evidence concerning the Colorado swine-raising facility, (4) in refusing National Farms and O.N.'s tendered evidence concerning the social utility of its swine operations, (5) in erroneously instructing the jury on the law of nuisance, (6) in erroneously instructing the jury on the issue of proximate cause, (7) in erroneously instructing the jury on damages, (8) in refusing to receive the affidavit of the jury foreperson upon hearing National Farms and O.N.'s motion for new trial, and (9) in overruling National Farms and O.N.'s motion for new trial.

## STANDARD OF REVIEW

In appellate review of a summary judgment, the court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Ev. Luth. Soc. v. Buffalo Cty. Bd. of Equal.*, 243 Neb. 351, 500 N.W.2d 520 (1993). In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993); *Kozeny v. Miller*, 243 Neb. 402, 499 N.W.2d 75 (1993); *Sikyta v. Arrow Stage Lines*, 238 Neb. 289, 470 N.W.2d 724 (1991). To establish

reversible error from a court's refusal to give a requested instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction is warranted by the evidence, and (3) the appellant was prejudiced by the court's refusal to give the tendered instruction. *Kozeny v. Miller, supra.* Furthermore, all the jury instructions given must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Id.*

## NUISANCE INSTRUCTIONS

National Farms and O.N. claim the trial court erroneously instructed the jury concerning liability for private nuisance.

National Farms and O.N.'s assertion that the instructions given do not reflect the law as stated in *Hall v. Phillips*, 231 Neb. 269, 436 N.W.2d 139 (1989), is correct.

In *Hall*, we expressly adopted the law of nuisance as articulated in the Restatement (Second) of Torts (1979). We stated:

> For a law action tried to a jury, where a court may be required to fashion instructions specifying the requirements for an actionable private nuisance and consequent liability, we are persuaded that the Restatement (Second) of Torts § 822 (1979) expresses a suitable standard to determine when one may be subject to liability and provides more guidance to a jury than do the present expressions concerning existence of a private nuisance as currently characterized in Nebraska equity cases.

*Hall v. Phillips*, 231 Neb. at 278, 436 N.W.2d at 145.

In the case at hand, the trial court, apparently pursuant to NJI2d Civ. 17.01, instructed the jury that the interference would be unreasonable if "1) [t]he damage was greater than the plaintiffs should be required to bear without compensation; or 2) [t]he defendants could have avoided the harm in whole or in part without undue hardship."

The first alternative in that instruction was obviously

fashioned after the Restatement, *supra*, § 829 A at 135, which states: "An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm resulting from the invasion is severe and greater than the other should be required to bear without compensation."

The second alternative was apparently modeled after the Restatement, *supra*, § 830 at 136: "An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if the harm is significant and it would be practicable for the actor to avoid the harm in whole or in part without undue hardship."

However, contrary to the comment to NJI2d 17.01 and the assertions of both National Farms and O.N. and the Kopeckys, comment *b.* to several sections of the Restatement, *supra*, shows that the authors of the Restatement did not intend that the rules contained within §§ 829 through 831 be used to instruct a jury. Rather, the authors of the Restatement clearly intended that the rules contained within §§ 829 through 831 be used to guide judges in those cases where it is appropriate to determine that an intentional interference is unreasonable as a matter of law. See, the Restatement, *supra*, §§ 826 and 829 through 831, comment *b.*

The authors of the Restatement explain: "When it is doubtful whether the facts of a case bring it within the rule here stated, the unreasonableness of the invasion is determined by the trier of fact under the general rule stated in § 826." The Restatement, *supra*, § 829, comment *b.* at 134. Accord, the Restatement, *supra*, §§ 829 A through 831, comment *b.* (the authors use language similar to that quoted above).

Section 826 at 119 states:

An intentional invasion of another's interest in the use and enjoyment of land is unreasonable if

(a) the gravity of the harm outweighs the utility of the actor's conduct, or

(b) the harm caused by the conduct is serious and the financial burden of compensating for this and similar harm to others would not make the continuation of the conduct not feasible.

As comment *d.* to § 826 explains, factors to consider when

determining the "gravity of the harm" and the "utility of the actor's conduct" are listed in the Restatement, *supra*, §§ 827 and 828, respectively.

Section 827 at 124 states:

In determining the gravity of the harm from an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) The extent of the harm involved;

(b) the character of the harm involved;

(c) the social value that the law attaches to the type of use or enjoyment invaded;

(d) the suitability of the particular use or enjoyment invaded to the character of the locality; and

(e) the burden on the person harmed of avoiding the harm.

Section 828 at 129 states:

In determining the utility of conduct that causes an intentional invasion of another's interest in the use and enjoyment of land, the following factors are important:

(a) the social value that the law attaches to the primary purpose of the conduct;

(b) the suitability of the conduct to the character of the locality; and

(c) the impracticability of preventing or avoiding the invasion.

Thus, whether the facts of a particular case fit within one of the rules contained in §§ 829 through 831 is a question of law and, as such, must be decided by the court. The jury, therefore, should not have been instructed as it was according to §§ 829A and 830. When the judge is unable to determine that an invasion is unreasonable as a matter of law under §§ 829 through 831, the jury decides pursuant to § 826. The jury should then be instructed pursuant to § 826.

If the judgment in the earlier case, Kaup v. National Farms, Inc., and O.N. Corporation, Holt County District Court, case No. 18235, is binding in this case because of the application of collateral estoppel, then the issue of nuisance would not be a matter submitted to the jury. The applicability of the doctrine of collateral estoppel to this case constitutes a question of law.

*Petska v. Olson Gravel, Inc.*, 243 Neb. 568, 500 N.W.2d 828 (1993). With regard to questions of law, this court is obligated to reach a conclusion independent from the trial court's conclusion. *Id.*; *Nebraska Builders Prod. Co. v. Industrial Erectors*, 239 Neb. 744, 478 N.W.2d 257 (1992).

There are four conditions that must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a judgment on the merits which was final, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *McCook Nat. Bank v. Myers*, 243 Neb. 853, 503 N.W.2d 200 (1993); *State on behalf of J.R. v. Mendoza*, 240 Neb. 149, 481 N.W.2d 165 (1992).

National Farms and O.N. argue that the issue decided here was not identical to the one decided in the Kaup case. National Farms and O.N. suggest that since the plaintiffs in the Kaup case lived approximately a mile nearer to the swine-raising facility and in the opposite direction from the Kopeckys, the issue of nuisance is not identical.

Faced with similar cases, other courts have applied a rule which says that in the absence of a substantial factual change, neither the same facts nor identical facts may be relitigated. *McHugh v. City of Wichita*, 1 Kan. App. 2d 180, 563 P.2d 497 (1977) (nuisance case in which collateral estoppel was not applicable because of a substantial and material change in circumstances). See, also, *Riblet v. Ideal Cement Co.*, 54 Wash. 2d 779, 345 P.2d 173 (1959) (nuisance case where, in the absence of a major factual change, prior judgment bound the parties). But see *Hill v. Stokely-Van Camp, Inc.*, 260 Minn. 315, 109 N.W.2d 749 (1961) (determination, in prior action against defendant, that defendant had created a private nuisance as regarded plaintiff in that action was not res judicata as to existence of private nuisance in later action by a different plaintiff).

Although we have never considered this precise issue in the context of a continuing tort, we have considered the application of the doctrine of collateral estoppel in the context of negligence. See *Peterson v. The Nebraska Nat. Gas Co.*, 204

Neb. 136, 281 N.W.2d 525 (1979). In *Peterson*, the plaintiff sued the defendant, The Nebraska Natural Gas Co., alleging that the gas company's negligence had caused extensive damage to his building. Prior to the trial in *Peterson*, the gas company had been sued by Louise Hammond, the owner of the Pathfinder Hotel, for negligently causing an explosion which destroyed that hotel. See *Hammond v. The Nebraska Nat. Gas Co.*, 204 Neb. 80, 281 N.W.2d 520 (1979). Asserting that the same explosion had caused the damage to his building a block away, Peterson moved for summary judgment on the issues of negligence and proximate cause. In affirming the trial court's grant of summary judgment, we stated:

> [W]here cases are interwoven and interdependent and the controversy involved has already been considered and determined in a prior proceeding involving one of the parties now before the court, the court has a right to examine its own records and take judicial notice of its own proceedings and judgment in the prior action.

*Peterson v. The Nebraska Nat. Gas Co.*, 204 Neb. at 138, 281 N.W.2d at 527. The grant of summary judgment on the issues of negligence and proximate cause was insufficient alone for Peterson to prevail, but when we considered it with the evidence on damages adduced at trial, we affirmed the district court's judgment in favor of Peterson.

We have determined that a similar approach should have been employed here. That is, we find that the procedure approved of in *Peterson* is also appropriate in the context of a continuing tort. Thus, for the purposes of applying the doctrine of collateral estoppel, an issue is considered to be the "identical issue" in the absence of a significant factual change.

It appears that the trial court initially intended to determine the extent to which the judgment in Kaup v. National Farms, Inc., and O.N. Corporation, Holt County District Court, case No. 18235, precluded relitigation of the existence of the nuisance after that judgment. At the start of the trial in this case, the court orally informed the jury that one of the material facts it was to determine was "whether the swine-raising facility was substantially changed after September 18, 1986 [the date of the Kaup verdict], so that unreasonable odors and flies ceased

to come from the facility after that date." However, a review of the jury instructions reveals that the jury was never required to make such a determination in order to arrive at a verdict. The issue of substantial change is only relevant to the applicability of the doctrine of collateral estoppel. Whether the doctrine of collateral estoppel applies is a question of law. Therefore, whether there was a substantial factual change in this case should have been decided by the court. The parties clearly addressed the issue during the course of the trial; however, nothing in the record discloses that the trial judge ever made the determination.

Accordingly, the issues we must address are whether there was a substantial change in the level of odors and flies after the date of the verdict in the Kaup case and also whether the Kopeckys are situated similarly enough to the Kaups, the plaintiffs in that case, so that the Kaup case should be applied as a matter of law.

The Kaups lived a mile nearer to the swine-raising facility and in the opposite direction from the Kopeckys. A review of the evidence shows that the wind blows in the direction of the Kopeckys, northwesterly, approximately 11 percent of the time, and the wind blows in the Kaups' direction, southeasterly, roughly 13 percent of the time. One of the Kopeckys' neighbors, Larry Ogden, who lived in the same general direction from the swine-raising facility, but approximately 1½ miles further away than the Kopeckys, testified that the odor he smelled at his residence was about the same strength as the odor he could detect at the Kopecky residence. Another neighbor, Jay Seger, who lived approximately 2½ miles north of National Farms and O.N.'s facility, described the odor that he received at his property as "just plain offensive." There was similar testimony from several others, confirming that the odor and flies could be detected at least as far away as the Kopeckys lived.

Even when viewing this evidence in the light most favorable to National Farms and O.N., we cannot conclude that the slight difference in wind frequency or the small difference in distance constitutes a substantial factual change of the sort necessitating relitigation of the nuisance during the period in which the case at hand overlaps with the Kaup case.

National Farms and O.N. adduced evidence showing that they stopped recycling the water they used to flush waste from their buildings in October 1990. They added screening stations outside the farrowing units and changed the screens to ones with smaller openings, which prevent more of the solids from flowing into the lagoon. Four center-pivot irrigation systems were also added. Some of the center-pivot irrigation systems were changed from a Rain Bird-type arrangement to a droplet type, which drops the effluent closer to the ground instead of shooting it up into the air. Feeders in the "grower/finisher" units were replaced. They were replaced so less feed would get into the waste disposal system, thereby reducing the potential for odor. National Farms and O.N. stopped pumping out of the primary finishing lagoon and started pumping from the secondary lagoon only. They also discontinued drawing down the lagoons below recommended levels. National Farms and O.N. thus showed that changes were made. The question at issue, however, is whether the changes were "substantial."

National Farms and O.N. showed they undertook efforts designed to reduce odors. They failed to adduce any evidence showing that their efforts actually reduced the odors emitted, that there ceased to be an invasion, or that the invasion was lessened to any degree. In this context, "substantial" must refer to the effect of the changes. The only evidence adduced at trial was that the odors emanating from the swine-raising facility had not changed. Michele Kopecky testified that neither the frequency nor the intensity of the odors changed at all after the Kaup decision. Dr. Leon Chesnin, the plaintiff's expert, who visited the facility in question in 1986 and in 1990, when asked "whether there has been a significant difference between 1986 and 1990 in the way in which the defendants have operated the waste treatment facility," replied: "My opinion is that as far as the human environment is concerned, in the neighborhood of the O.N. facility, the impact will be the same."

Given this testimony, the only evidence adduced at trial was that the changes made to the swine-raising facility were not substantial. In the absence of a substantial factual change, National Farms and O.N., as a matter of law, are bound by the prior determination on the issue of nuisance. The issue of

liability, therefore, never should have been submitted to the jury. Thus, any error committed in instructing the jury on the law of nuisance was harmless. See *Plambeck v. Union Pacific RR. Co.*, 232 Neb. 590, 441 N.W.2d 614 (1989).

## SUMMARY JUDGMENT

In light of our holding above that National Farms and O.N. are estopped from denying the existence of the nuisance, we need not reach the assignment of error pertaining to the grant of partial summary judgment.

## MOTION TO INSPECT

National Farms and O.N. contend that the trial court abused its discretion by arbitrarily denying their motion to allow the jury to view their swine-raising facility. A motion to inspect the premises under § 25-1108 is, by the terms of the statute, left to the discretion of the trial court. A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or to refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. *Wulff v. Wulff*, 243 Neb. 616, 500 N.W.2d 845 (1993). The denial of the motion was tenable and in no way deprived National Farms and O.N. of a substantial right or just result and, therefore, was not an abuse of discretion.

## EVIDENCE OF SOCIAL UTILITY

National Farms and O.N. next complain that the trial court erred in refusing to admit the evidence tendered on the social utility of their swine-raising operation. Since, as the case was tried, unreasonableness was at issue, and since that issue was given to the jury to decide, the proffered evidence on social utility should have been admitted. As we explained above, in a nuisance case, when the issue of unreasonableness is submitted to the jury, the jury is to be instructed pursuant to the Restatement (Second) of Torts § 826 (1979), which subsumes evidence on social utility.

Although the proffered evidence addressed the social utility of swine-raising in general, and not the social utility of the

incumbent waste disposal specifically, it should have been admitted. The authors of the Restatement obviously did not intend that an activity be broken down into discrete parts, but, rather, that the social utility of an act in its entirety be considered. The authors wrote:

> The process of weighing the gravity of the harm against the utility of the conduct assesses the social value of the actor's activity in general. Thus in the case of noise and other harassment created by the operation of an airport, the utility depends upon the social value of aviation and the need for air.transportation. In the case of a cement factory polluting the air with dust, the utility may be reflected in society's need for building materials.

The Restatement, *supra*, § 826, comment *f.* at 122-23. See, also, *Soukup v. Republic Steel Corp.*, 78 Ohio App. 87, 66 N.E.2d 334 (1946) (steel manufacturer's part in the war effort was admissible evidence with regard to the issue of unreasonableness). We therefore hold that the evidence regarding the social utility of the swine-raising facility should have been admitted. This error, however, is a harmless one, since liability was established pursuant to the doctrine of collateral estoppel.

## COLORADO FACILITY

Next, National Farms and O.N. argue that the court erred in allowing the Kopeckys' witness to inspect and later to testify about the Colorado swine-raising facility of a wholly owned subsidiary of National Farms. Both parties assert that entry upon land for inspection is controlled by Neb. Ct. R. of Discovery 34 (rev. 1992). However, rule 34, which follows Fed. R. Civ. P. 34, is limited in scope. It applies only to parties to the action. See *Trans Pacific Ins. Co. v. Trans-Pacific Ins. Co.*, 136 F.R.D. 385 (E.D. Pa. 1991). See, also, *Miner v. Punch*, 838 F.2d 1407, 1409 (5th Cir. 1988) (since the provisions of federal rule 34 "apply only to the parties to the pending litigation," the court declined to order the Ohio superintendent of insurance, who was not a party, to produce records of an insurance company in liquidation); *Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir. 1985), *cert. denied* 474 U.S. 1021, 106 S. Ct. 571, 88 L. Ed. 2d

555 (federal rule 34, governing production of documents and things for inspection, copying, or photographing, may not be used to discover matters from a nonparty); *Pollitt v. Mobay Chemical Corp.*, 95 F.R.D. 101, 106 (S.D. Ohio 1982) ("it is well settled that Rule 34 provides this Court with no authority to order a *non*-party to permit entry on land"); *Huynh v. Werke*, 90 F.R.D. 447 (S.D. Ohio 1981) (federal rule 34 expressly applies to discovery among parties only). National Farms' wholly owned subsidiary in Colorado is not a party to this action. Under the federal rules, entry upon the land of a nonparty for inspection is governed by Fed. R. Civ. P. 45, as amended in 1991. There is no Nebraska discovery rule which serves as a counterpart to federal rule 45. However, the advisory committee's notes to rule 45 state:

> [T]he revised rule authorizes the issuance of a subpoena to compel the inspection of premises in the possession of a non-party. Rule 34 has authorized such inspections of premises in the possession of a party as discovery compelled under Rule 37, but prior practice required an independent proceeding to secure such relief ancillary to the federal proceeding when the premises were not in the possession of a party.

Nebraska's rule 34(c) addresses persons, not parties, and states: "This rule does not preclude an independent action against a person not a party for production of documents and things and permission to enter upon land."

Thus, the trial court should have required the Kopeckys to initiate a discovery action against the wholly owned subsidiary in Colorado. The court erred in ordering the inspection. This error, however, and any error in presenting to the jury the evidence obtained from the inspection, are harmless, since liability is established as a matter of law pursuant to the doctrine of collateral estoppel.

### PROXIMATE CAUSE INSTRUCTION

National Farms and O.N. assert that the court improperly instructed the jury on the issue of proximate cause. We disagree. As we have frequently stated, all the jury instructions must be read together, and if, taken as a whole, they correctly

state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating a reversal. *Kozeny v. Miller*, 243 Neb. 402, 499 N.W.2d 75 (1993).

With regard to proximate cause, the court instructed the jury:

A proximate cause is [a] cause that produces a result in a natural and continuous sequence, and without which the result would not have occurred.

It need not, however, be the immediate cause; it may be enough that the acts complained of set in motion a series of events through which it produced damage.

The court just added the second sentence to the proximate cause instruction found in NJI2d Civ. 3.41. The second sentence is an accurate statement of the law. See, *Rose v. Buffalo Air Service*, 170 Neb. 806, 104 N.W.2d 431 (1960); *Coyle v. Stopak*, 165 Neb. 594, 86 N.W.2d 758 (1957); *Colvin v. Powell & Co., Inc.*, 163 Neb. 112, 77 N.W.2d 900 (1956); *Kroeger v. Safranek*, 161 Neb. 182, 72 N.W.2d 831 (1955); *McClelland v. Interstate Transit Lines*, 142 Neb. 439, 6 N.W.2d 384 (1942); *Johnson v. Mallory*, 123 Neb. 706, 243 N.W. 872 (1932); *St. Joseph & G.I.R. Co. v. Hedge*, 44 Neb. 448, 62 N.W. 887 (1895). Furthermore, we cannot see how the combination of these two sentences would mislead the jury. This instruction was proper.

### INSTRUCTION ON DAMAGES

National Farms and O.N. assert that instruction No. 3, concerning damages, erroneously allowed a "double recovery" for the plaintiffs. Specifically, National Farms and O.N. object to the following language:

There are two plaintiffs in this action, and they both own their land together. You may award damages for any damages suffered by either of them, and any that might be suffered in common. If you find for the plaintiffs, you must determine on [a] dollar figure for all of the damage suffered by both plaintiffs.

Having read this instruction in conjunction with all the others, we are not convinced that this language allowed a double recovery.

## MOTION FOR NEW TRIAL

Finally, National Farms and O.N. submit that the trial court erred in overruling their motion for new trial. As consolidated, two grounds have been asserted by National Farms and O.N. in support of their motion for new trial: (1) that the verdict was excessive and (2) that there was juror misconduct.

A district court's denial of a motion for new trial will be affirmed when the court's decision is neither prejudicial nor an abuse of discretion. *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993).

With regard to allegedly excessive verdicts, we have held that a verdict will not be set aside on appeal unless it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, or mistake, or it is clear that the trier of fact disregarded the evidence or rules of law. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). We are not persuaded that the verdict in this case was excessive.

In a motion for new trial, allegations of misconduct by jurors must be substantiated by competent evidence. The misconduct complained of must relate to a disputed matter that is relevant to the issues in the case and must have influenced the jurors in arriving at the verdict. *Nichols v. Busse, supra.* Here, the only evidence offered in support of National Farms and O.N.'s allegation is the affidavit of the jury foreperson, which affidavit the trial court refused. The trial court's denial of the motion for new trial, therefore, was proper if the affidavit was properly refused.

Neb. Rev. Stat. § 27-606(2) (Reissue 1989) controls the use of juror affidavits to impeach a verdict. It provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was . . . improperly

brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

It is clear that § 27-606(2) prohibits admission of a juror's affidavit to impeach a verdict on the basis of the jury's motives, methods, misunderstanding, thought processes, or discussions during deliberations, which enter into the verdict. *Rahmig v. Mosley Machinery Co., supra.* Despite National Farms and O.N.'s intimations to the contrary, we find that the affidavit directly addressed the jury's thought processes and discussions during deliberations and was therefore properly excluded. Since without the affidavit there is no evidence of juror misconduct, we affirm the trial court's denial of the motion for new trial.

## CONCLUSION

Although the trial court's instruction on the issue of unreasonableness was erroneous, and although the evidence on social utility should have been admitted, the judgment of the district court is affirmed, since those errors were harmless.

AFFIRMED.

SHANAHAN, J., not participating in the decision.
WHITE and FAHRNBRUCH, JJ., concur.