BRITTANY LEAVITT, A MINOR, BY AND THROUGH HER MOTHER
AND NEXT FRIEND, SANDRA A. LEAVITT, APPELLANT, V.
BERNARD MAGID, M.D., APPELLEE.

598 N.W. 2d 722

Filed August 13, 1999.   No. S-98-065.

Thomas A. Gleason, of Gleason & Green, for appellant.

William M. Lamson, Jr., and William R. Settles, of Lamson, Dugan & Murray, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

GERRARD, J.

## NATURE OF CASE

Brittany Leavitt, by and through her mother and next friend, Sandra A. Leavitt, sued Dr. Bernard Magid for medical malpractice, alleging that Magid's negligent treatment while Sandra was pregnant with Brittany resulted in Brittany's permanent brain damage. Brittany appeals from a jury verdict in favor of Magid.

## FACTUAL BACKGROUND

Brittany's operative amended petition alleges that Magid was responsible for the care and treatment of Sandra and Brittany during Sandra's pregnancy, including Brittany's delivery on January 17, 1988. The petition alleges that Magid failed to follow the recognized standard of care in several respects: (1) failure to perform adequate prenatal examinations to determine the size of the fetus; (2) failure to identify evidence of a condition called "intrauterine growth restriction" (IUGR); (3) failure to diagnose IUGR; (4) failure to respond to IUGR by performing ultrasound studies and fetal well-being studies; (5) failure to recognize and respond to signs of decreased fetal movement; (6) failure to initiate early delivery in order to maximize the health of the fetus; and (7) failure to initiate a controlled labor and delivery when the health of the fetus was at its optimum, rather than subjecting the fetus to the additional stress of a complicated labor and delivery.

IUGR is a condition in which the fetus, for some reason, does not grow as quickly as would otherwise be expected. In most cases, IUGR is the result of a damaged or undeveloped placenta. The placenta nourishes the fetus; when the placenta is damaged, the fetus is undernourished, and this may result in a lack of fetal growth, neurological damage, or ultimately, the death of the fetus.

The petition alleges that as a result of Magid's negligence, Brittany suffered hypoxic ischemic injuries and intracerebral hemorrhages. Because of these injuries, Brittany was placed in neonatal intensive care and underwent extensive medical care and treatment. As a further result of her injuries, Brittany con-

tinues to suffer from seizures, abnormal growth and development, and mental retardation.

At trial, Brittany presented the testimony of Dr. Thomas Easterling, an expert in perinatal care. Easterling testified generally that Magid was negligent in failing to diagnose IUGR and that Magid's failure to respond to the condition resulted in an ischemic event at some point during a 6-day period before Sandra went into labor. This ischemic event, according to Easterling, was the cause of Brittany's medical condition at birth.

Brittany attempted to elicit testimony from Easterling regarding Magid's actions during labor and delivery. At that point, Magid's counsel received permission from the trial court to voir dire Easterling, and the following exchange occurred:

> [MAGID'S COUNSEL]. Doctor, in your opinion, a delivery of this infant two to three hours earlier would have made no difference, is that correct, in the outcome?
>
> [EASTERLING]. A delivery two to three — "no" is a very absolute term. I believe the baby was seriously damaged two to three hours before delivery.
>
> Did the intervening two to three hours have a minor detriment in the condition of the baby? That's very hard to say. I can't tell you that it did not influence the baby. We have evidence that the majority of the damage was done prior to that time.

Thereafter, Magid objected to Easterling's testimony regarding Magid's actions during labor and delivery. Magid initially argued that since Easterling had testified that Brittany's injury occurred 24 to 48 hours before delivery, any subsequent breach of the standard of care was irrelevant. Brittany argued that while the majority of the damage may have been inflicted prior to labor and delivery, if even some minor injury resulted from negligence during labor and delivery, testimony regarding that negligence would still be relevant.

According to Brittany's offer of proof, she intended for Easterling to testify that Magid breached the standard of care by failing to recognize evidence of fetal distress and failing to respond by delivering the child immediately. Brittany said that Easterling would have testified that subjecting the already trau-

matized fetus to the additional stress of labor and delivery contributed to her brain injury.

Magid also argued that testimony by Easterling regarding a breach of the standard of care during labor and delivery would be outside the scope of discovery and that Easterling did not reveal his opinion regarding labor and delivery during his deposition nor did Brittany amend her answers to interrogatories regarding Easterling's opinion on labor and delivery. Brittany responded to the trial court that Easterling had discussed at his deposition the possibility of some additional injury being suffered by Brittany during labor and delivery and that this discussion was sufficient to give Magid notice of the theory.

The trial court sustained Magid's objection and refused to allow Easterling to testify to any breach of the standard of care by Magid during labor and delivery. Whether the objection was sustained on the basis of relevance or as a sanction for a violation of the rules of discovery is unclear from the record.

After a 10-to-2 verdict in favor of Magid, Brittany filed a motion for new trial. In addition to the issue of Easterling's testimony, Brittany argued that a new trial should have been granted due to juror misconduct. Brittany offered affidavits from the dissenting jurors, alleging generally that one of the majority jurors, an attorney with an Omaha law firm, had intimidated the other jury members into using a definition of proximate cause that conflicted with the jury instructions. Magid argued that the affidavits were inadmissible under Neb. Rev. Stat. § 27-606 (Reissue 1995). Magid also offered, alternatively, affidavits from the attorney-juror and another juror contradicting the accounts of the dissenting jurors.

The affidavits were not received into evidence, and the motion for new trial was overruled. Brittany appeals.

## ASSIGNMENTS OF ERROR

Brittany assigns, restated, that the trial court erred in failing (1) to allow her expert witnesses to render opinions relating to the negligence of Magid during labor and delivery, (2) to admit and consider the affidavits of the two dissenting jurors, (3) to grant an evidentiary hearing and make findings on the issue of

juror misconduct, and (4) to grant her a new trial based on juror misconduct.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Reiser v. Coburn*, 255 Neb. 655, 587 N.W.2d 336 (1998).

The admissibility of evidence is reviewed for abuse of discretion where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court. *Deuth v. Ratigan*, 256 Neb. 419, 590 N.W.2d 366 (1999).

## ANALYSIS

### EXCLUDED EXPERT TESTIMONY

Brittany argues on appeal that Easterling's proffered testimony regarding events during labor and delivery was relevant evidence and should have been admitted. Magid maintains on appeal that the evidence was excluded, not as irrelevant, but as a sanction pursuant to Neb. Ct. R. of Discovery 37 (rev. 1997). Magid argues that Brittany failed to amend her interrogatories to inform Magid of Easterling's opinions regarding labor and delivery and that this failure was a violation of Neb. Ct. R. of Discovery 26(e)(1)(B) (rev. 1996), warranting exclusion of Easterling's testimony on those issues. Magid further argues, in the alternative, that the proffered testimony was irrelevant and that no prejudice resulted from the exclusion because the substance of Easterling's testimony was presented by other witnesses.

We determine that, even assuming Easterling's proffered testimony to be relevant and otherwise admissible, the exclusion of that testimony does not warrant reversal because the testimony was cumulative. To constitute reversible error in a civil case, the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about evidence admitted or excluded. *Radecki v. Mutual of Omaha Ins. Co.*, 255 Neb. 224, 583 N.W.2d 320 (1998); *Walkenhorst v. State*, 253 Neb. 986, 573 N.W.2d 474 (1998). An improper exclusion of evidence is ordinarily not prejudicial where sub-

stantially similar evidence is admitted without objection. See *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998). See, also, e.g., *Talle v. Nebraska Dept. of Soc. Servs.*, 253 Neb. 823, 572 N.W.2d 790 (1998). An appellate court will not predicate prejudicial error on the exclusion of redundant testimony of a particular witness. See *Thacker v. State*, 193 Neb. 817, 229 N.W.2d 197 (1975).

In the instant case, Brittany made an offer of proof near the end of Magid's case in chief, stating that Easterling would have testified that

> the defendant's breach of the standard of care of obstetricians in 1988 continued throughout the labor and delivery of Sandra Leavitt; specifically in his failure to recognize evidence of late decelerations and severe fetal distress when the fetus was first hooked up to the fetal monitors;
>
> His failure to then arrange for and deliver the child immediately, thus avoiding the prolonged and extended three-and-a-half hour labor and delivery of an already compromised and stressed fetus;
>
> That as a result of that breach of the standard of care in labor and delivery, an already compromised fetus was exposed to further injury and, in fact, the trauma of the vaginal delivery contributed to the brain injury which this baby suffered . . . .

The record reveals, however, that during Brittany's rebuttal case, another expert, Dr. Kenneth Petri, gave testimony nearly identical to that contained in Brittany's offer of proof. Petri testified in the following colloquy:

> [BRITTANY'S COUNSEL]. All right. Do you have an opinion, Doctor, based upon your review of those fetal monitoring strips with respect to what the standard of care required of Dr. Magid in that labor and delivery room?
>
> [PETRI]. Standard of care required a lot more reaction on his part, at least an awareness that there was significant fetal distress going on from the very beginning. And then, you know —
>
> Q. And if you're aware of that fetal distress, what is the duty of the physician?

A. If the distress is considered to be significant, and I think in the beginning of the strip where there is a six-minute bradycardic episode, this is in the very first part of the monitor strip, that preparations for Cesarean section needs to be made at that point. Especially considering that the patient is now four to five centimeters dilated and you might assume another three or four hours, at least, of labor on the average.

Q. So from that very point where we have that six-minute period of fetal distress, it's your opinion that preparations should have been made for a C-section?

A. Yes.

. . . .

Q. . . .

. . . [C]an you tell us your opinion with respect to whether the events of labor and delivery contributed to Brittany's brain injury?

A. Yes, I think they were the likely cause.

. . . .

Q. Let me back up and ask you this question, Doctor, the same one you were asked in your deposition: "Did this labor and delivery do that baby any good?"

A. No, it was obviously at least somewhat harmful.

In addition to the testimony of Petri, two other expert witnesses, Dr. Fred Kader and Dr. Mary Kathleen Bowen, each testified during direct examination that some of Brittany's brain injury was due to trauma inflicted during labor and delivery.

Finally, the district court instructed the jury that it could find for Brittany if she proved her case with regard to any of the particular allegations of negligence contained in her petition. Instruction No. 2 included in part the following allegations:

5. Failure to provide appropriate management of a growth restricted fetus by initiating an earlier delivery of the fetus from its hostile environment in order to maximize the health of the fetus; and

6. Failure to initiate an earlier and more controlled labor and delivery on January 17, 1988, which failure resulted in the exposure of a then compromised fetus to the additional stresses of a complicated labor and delivery.

It is evident from the portions of the record excerpted above that Easterling's proposed testimony ultimately proved to be cumulative. Brittany's other expert witnesses offered essentially the same evidence as contained in Brittany's offer of proof with respect to Easterling. The jury was specifically instructed to consider Magid's alleged negligence during labor and delivery, and expert testimonial evidence was adduced on that point for Brittany to argue to the jury and for the jury to consider. We have also considered, and find significant, the substance of Easterling's opinion regarding negligence during labor and delivery when he was initially questioned on voir dire prior to Magid's objection. When compared with Petri's more definitive testimony regarding labor and delivery, it is difficult to conclude that Brittany was prejudiced by the exclusion of Easterling's less substantial and definitive opinion on the same subject. For these reasons, we determine that Brittany was not prejudiced by the exclusion of Easterling's proffered testimony on the same point.

Therefore, we need not determine if the trial court erred in excluding some of Easterling's testimony, because such error, if any, was not prejudicial to Brittany and would not warrant reversal of the judgment of the district court. Brittany's first assignment of error is without merit.

## JUROR MISCONDUCT

Brittany's remaining assignments of error all relate to the issue of alleged juror misconduct. An application for new trial may properly be based upon allegations of misconduct of the jury. See Neb. Rev. Stat. § 25-1142 (Reissue 1995). In a motion for new trial, allegations of misconduct by jurors must be substantiated by competent evidence. The misconduct complained of must relate to a disputed matter that is relevant to the issues in the case and must have influenced the jurors in arriving at the verdict. *Kopecky v. National Farms, Inc.*, 244 Neb. 846, 510 N.W.2d 41 (1994).

We note initially that the allegations contained in Brittany's affidavits were directly contradicted by affidavits conditionally proffered by Magid, so that the truth of the allegations is contested. The first issue we must consider, however, is whether the

affidavits offered by Brittany were admissible evidence. Section 27-606(2) provides:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received for these purposes.

Section 27-606(2) clearly establishes that affidavits relating to the process of jury deliberations are generally inadmissible. In order for Brittany's affidavits to be admissible evidence of misconduct, they must contain information relating to one of the two exceptions provided by the statute, i.e., (1) extraneous prejudicial information improperly brought to the jury's attention or (2) outside influence improperly brought to bear on a juror. See *id.*

Brittany does not argue that the allegations presented in her proffered affidavits relate to any outside influence on a juror. The issue to be resolved, therefore, is whether the allegations contained in Brittany's affidavits relate to extraneous prejudicial information.

Brittany alleges that the legal knowledge brought into the jury deliberations by the attorney-juror constituted extraneous prejudicial information within the meaning of the statute. This court confronted a similar situation in *Nichols v. Busse*, 243 Neb. 811, 503 N.W.2d 173 (1993). In that case, an action for intentional infliction of emotional distress, the juror accused of misconduct had related her personal knowledge to the jury regarding insurance claim practices. *Id.* We determined:

> Based on our review of the pertinent case law, we feel that the proper approach is to prohibit the use of juror affidavits which seek to impeach verdicts due to a juror's

intradeliberational statements based on his or her personal knowledge, when that knowledge is not directly related to the litigation at issue. . . .

. . . .

We agree with decisions from other jurisdictions which have held that a juror's intradeliberational statements, when based on personal knowledge not directly related to the litigation at issue, do not constitute "extraneous" information within the meaning of the language of § 27-606(2).

*Nichols*, 243 Neb. at 829-30, 503 N.W.2d at 186.

Our holding in *Nichols v. Busse, supra,* is controlling in the present case. Brittany is attempting to claim that the legal knowledge of an attorney-juror, brought into the jury room, constitutes extraneous information within the meaning of § 27-606(2). That juror's general legal knowledge, however, is personal knowledge not directly related to the litigation at issue and is not extraneous information within the meaning of the statute.

Brittany argues, however, that the attorney-juror's knowledge did constitute extraneous information because the attorney-juror's knowledge was directly related to an issue in the litigation, i.e., proximate cause. Brittany misapprehends our rationale in *Nichols v. Busse, supra.* Information is not "directly related to the litigation at issue" merely because it relates generally to the legal issues presented. Instead, information directly relates to the litigation at issue when it is relevant to the factual circumstances of the case. In the present case, the attorney-juror's legal knowledge was general and not specific to the factual circumstances presented.

Brittany also argues that she was entitled to an evidentiary hearing to investigate her allegations of juror misconduct. As support, Brittany cites *Hunt v. Methodist Hosp.,* 240 Neb. 838, 485 N.W.2d 737 (1992). In that case, this court ordered a remand for the purpose of holding an evidentiary hearing regarding jury misconduct. *Id.* We held: " 'When an allegation of misconduct is made, and is supported by a showing which tends to prove that serious misconduct occurred, the trial court should conduct an evidentiary hearing to determine whether the alleged misconduct actually occurred.' " *Id.* at 849, 485 N.W.2d

at 744-45 (quoting *State v. Steinmark*, 201 Neb. 200, 266 N.W.2d 751 (1978)).

Brittany's reliance on *Hunt v. Methodist Hosp., supra*, is misplaced. In that case, we determined that the affidavits proffered by the appellant were at least in part admissible and that they sufficiently supported the appellant's allegations of misconduct. *Id.* In the present case, the district court determined that the affidavits proffered by Brittany were entirely inadmissible, and we agree with that determination. Thus, Brittany's allegations of misconduct are completely unsupported by admissible evidence, and the district court did not err in denying her an evidentiary hearing.

Brittany proffered no admissible evidence to support her allegations of juror misconduct. Brittany's assignments of error in that regard are without merit.

## CONCLUSION

We, therefore, conclude that the district court did not commit reversible error during trial nor did the court abuse its discretion in denying Brittany's motion for new trial; the judgment of the district court is affirmed.

AFFIRMED.

MILLER-LERMAN, J., not participating.